RABB v. SEIDEL et al. (No. 6265.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 21, 1920. Rehearing Denied Feb. 25, 1920.)

1. BILLS AND NOTES ⊚═⇒539—FINDING OF NO DELIVERY TO PAYEES HELD NOT OBJECTIONABLE.

In action on note where note passed into actual possession of payees only for purpose of having it indorsed by them to aid in the further negotiation of the note to some other person, a finding that the note was never delivered to payees, "in the sense that they advanced any money thereon," *held* not objectionable.

2. BILLS AND NOTES ⊚═⇒63—INDORSEMENT OF NOTE BY PAYEES AND RETURN THEREOF TO MAKERS FOR NEGOTIATION TO OTHER PERSONS DOES NOT RELEASE ACCOMMODATION MAKER ON THEORY OF NO DELIVERY.

That note was given to payees merely for purpose of having it indorsed by them to aid in the further negotiation of the note to some other person did not, in absence of agreement that note should be discounted by payees and no other person, release accommodation maker from liability upon theory that it was never delivered to payees, and therefore never became a valid obligation against accommodation maker, where accommodation maker's credit was extended for the purpose of enabling the other makers to procure money.

3. BILLS AND NOTES ⊚═⇒443(1)—EITHER LEGAL OWNER OR BENEFICIAL OWNER OF NOTE COULD BRING ACTION THEREON.

Holder of legal title to note in trust for another could sue thereon in his own name, or the suit could be brought in the name of the beneficial owner.

4. BILLS AND NOTES ⊚═⇒540—LEGAL OWNER ENTITLED TO JUDGMENT IN OWN NAME, THOUGH PLEADING SHOWS EQUITABLE TITLE TO BE IN ANOTHER.

The legal owner of a note could procure a judgment in his own name, even though he admitted in his pleadings that the equitable title was in another; such judgment to be subject to the equities shown to exist against the beneficial owner.

5. BILLS AND NOTES ⊚═⇒443(1)—BENEFICIAL OWNER NOT A NECESSARY PARTY TO SUIT BY HOLDER OF LEGAL TITLE.

Where a note is held for the benefit of another, the beneficial owner is not a necessary party to the suit, nor need holder of legal title sue as trustee or state that he sues for the benefit of the equitable owner.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by William Seidel against Frank Rabb, Mrs. S. M. Turner, and others. Judgment for plaintiff except as against last-named defendant, and first-named defendant appeals. Affirmed.

H. D. McDonald and E. P. Scott, both of Corpus Christi, for appellant.

G. E. Pope, of Goliad, and G. R. Scott, Boone & Pope, of Corpus Christi, for appellees.

MOURSUND, J. This was a suit by William Seidel on a promissory note executed by Jesse S. Fry, T. J. Lawson, D. McNeill Turner, S. M. Turner, and Frank Rabb, payable to B. H. Wilson and A. C. Priday, which resulted in a judgment in favor of plaintiff, except as against Mrs. Turner. The trial court's findings of fact and conclusions of law are as follows:

"Findings of Fact.

"First. On and prior to September 30, 1907, defendants T. J. Lawson, Jesse S. Fry, and D. McNeill Turner were interested in the development of the Piedras Pintas oil field in Duval county, Tex., and engaged in the production and marketing of oil which was being produced in said field. They were in need of money to enable them to carry on their development and production and concluded to obtain a loan for such purpose. Through D. McNeill Turner they conducted negotiations with B. H. Wilson and A. C. Priday for a loan of $10,000 for such purposes, and, to obtain it, it was proposed by said Turner that Lawson, Fry, himself, Mrs. S. M. Turner, and Frank Rabb should execute and deliver a note to said Wilson and Priday for said sum, and that the same should be additionally secured by a deed of trust to be executed by Lawson and Fry on all of their interest in said oil field, the oil already produced as well as future production, and Mrs. S. M. Turner, wife of D. McNeill Turner, was also to give a deed of trust on certain properties belonging to her in Bexar and Nueces counties.

"Second. Wilson and Priday having agreed to make the loan, a joint and several note for $10,000 was drawn, dated September 30, 1907, payable to the order of B. H. Wilson and A. C. Priday one year after date, with interest at the rate of 10 per cent. per annum from date until paid, payable annually, both principal and interest payable at Corpus Christi, Tex., and providing that in case default was made in the payment of said note the makers should pay an additional amount of 10 per cent. on the principal and interest of said note as attorney's fee in the event same was placed in the hands of an attorney for collection after maturity, and reciting that it was secured by a deed of trust executed by D. McNeill Turner and S. M. Turner on real estate situated in Bexar and Nueces counties and by a deed of trust executed by T. J. Lawson and Jesse S. Fry upon their entire interest in the Piedras Pintas oil field, including oil leases, oil then produced and to be produced, tanks, pipe lines, loading racks, boilers, engines, wells, and machinery of every kind and character. This note was executed at Corpus Christi, Tex., on the day of its date by said T. J. Lawson, Jesse S. Fry, D. McNeill Turner, S. M. Turner, and Frank Rabb, and is a joint and several note and on its face appears to have been made by the several makers as principals. After being so executed, this note was left with D. McNeill Turner and T. J. Lawson

to be negotiated for the purpose of obtaining money to enable said Fry, Lawson, and Turner to prosecute said oil business, and after its execution Frank Rabb left the city and returned to his home in Brownsville.

"Third. After said note was so executed and left with said Lawson and McNeill Turner for negotiation, as aforesaid, said Wilson and Priday declined to make said loan, and being still desirous of obtaining said money thereon, and for the purpose of enabling him to use said note, said McNeill Turner got Wilson and Priday to indorse said note in blank, which they did by indorsing the same in blank as follows: 'Pay to the order of —— without recourse on us. B. H. Wilson. A. C. Priday.'

"Fourth. The note as so executed by the parties aforesaid was never delivered to the payees, Wilson and Priday, in the sense that they advanced any money thereon, but the same was indorsed by them in blank, as aforesaid, at the request of said D. McNeill Turner to enable the said Turner, Lawson, and Fry to use the same for the purpose of obtaining the desired loan and was left with said Turner.

"Fifth. For such purpose, after said note was so indorsed, Fry, Lawson, and Turner took said note to San Antonio, Tex., for the purpose of endeavoring to negotiate the same for such purpose and they there endeavored to negotiate it, but failed to obtain money thereon, and, at the suggestion of Lawson, Turner and Lawson went to Goliad for the purpose of trying to negotiate said note to the First National Bank of Goliad. At the latter place Lawson and Turner began negotiations with said Bank through W. B. Campbell, president thereof, to obtain money on said note for the purposes for which it was executed. In their negotiations Turner and Lawson represented to Mr. Campbell, as president of said bank, that they desired the money on said note for the purpose of developing said oil field and producing and marketing oil therefrom, and as an inducement to him to loan said money represented that Frank Rabb was worth from $100,000 to $400,000.

"Sixth. At the time of the negotiations with Mr. Campbell, president of the First National Bank of Goliad, he did not know Frank Rabb and did not know his financial standing, but he relied upon the information furnished him by said Turner and Lawson, and on the strength of Frank Rabb's name on said note the First National Bank of Goliad agreed to loan Lawson and Fry $6,000 to be immediately available, and the $10,000 note was to be put up as collateral security, and the deeds of trust called for in said note were to be delivered to said bank.

"Seventh. Accordingly, on the 4th day of October, 1907, for the purpose of carrying said negotiations into effect and to obtain said sum of $6,000, said Lawson and Fry made, executed, and delivered to said the First National Bank of Goliad their joint and several promissory note bearing said date, payable to said bank 90 days after date in said sum of $6,000, with interest from maturity until paid at the rate of 10 per cent. per annum, interest payable annually, and if not paid when due to bear the same rate of interest as the principal and providing that failure to pay any installment of interest should, at the option of the holder, mature the whole note, and that if said note

was not paid at maturity and was collected by an attorney or through legal proceedings, an additional amount of 10 per cent. as attorney's fees should be paid, and reciting that said $10,000 note was transferred and delivered as collateral security to said bank and that a note for $6,000 signed by D. McNeill Turner and S. M. Turner was also delivered as collateral and authorized the holder of said note to sell said collateral on default of said note at public or private sale, with or without notice, and said note so executed was on said date delivered to said the First National Bank of Goliad by Lawson and Fry as collateral security thereto said note for $10,000 sued on herein and above described as so indorsed was delivered to said bank, and said bank inserted in said blank indorsement its name, as the transferee thereof, and the indorsement thereon now appears as follows: 'Pay to the order of First National Bank of Goliad without recourse on us. B. H. Wilson. A. C. Priday.' And as a part of the said transaction and as additional security to the payment of said note for $6,000, the note of Mrs. S. M. Turner and D. McNeill Turner and the deed of trust which they agreed to give were executed and delivered to said bank, and also as additional security the deed of trust above referred to was executed by Lawson and Fry and delivered to said bank. And said bank thereupon advanced said sum of $6,000 to said Lawson and Fry, and said money so advanced was used by said parties for the purpose for which said loan was obtained.

"Eighth. Default was made by Lawson and Fry in the payment of said $6,000 note at its maturity, and some time thereafter the First National Bank of Goliad, being still the owner and holder of said note, brought suit thereon against Lawson and Fry and the trustees in the deeds of trust to enforce the collection of said note and foreclosure of the lien of the deed of trust, and on the 11th day of September, A. D. 1916, obtained judgment in the district court of Goliad county, Tex., for the amount of the balance due on said note, principal, interest, and attorney's fees, and all costs of court.

"Ninth. Default having been made by Mrs. S. M. Turner and D. McNeill Turner in the performance of the conditions of the deed of trust executed by Mrs. S. M. Turner joined by said D. McNeill Turner, said deed of trust was enforced on the properties therein conveyed and the proceeds realized therefrom were applied on said indebtedness; part of said proceeds being applied before the judgment so rendered against T. J. Lawson and Jesse S. Fry and part subsequent to the rendition of such judgment.

"Tenth. Prior to the trial of this cause in this court, the First National Bank of Goliad had exhausted all the securities afforded by the aforesaid deeds of trust, and there was outstanding and unpaid on the indebtedness due it the amount of the balance due on said judgment, principal, interest, and attorney's fees and costs of court, as hereinafter stated, and the only security remaining to said bank for the payment of said indebtedness was the note sued on and in controversy in this cause.

"Eleventh. Subsequent to the delivery of the note in controversy in this cause to the First National Bank of Goliad, same was transferred, assigned, and delivered by said bank to

plaintiff herein as trustee for said bank, and the same has since been held and is now held by said plaintiff as such trustee for the use and benefit of said Bank.

"Twelfth. At the time defendant Frank Rabb signed the note in controversy herein, he had no interest in said oil field and went on said note as an accommodation to Mr. and Mrs. D. McNeill Turner to enable Lawson and Fry to obtain money for the development of said oil industry and the said Frank Rabb was, in fact, a surety on said note.

"Thirteenth. Other than the notice imputed by the indorsement on said note, as hereinbefore found, the First National Bank of Goliad had no other notice of the status of Frank Rabb on said note.

"Fourteenth. The First National Bank of Goliad made said loan to Lawson and Fry and advanced said credit on the strength of the security afforded by said $10,000 note and the signature of the said Frank Rabb thereto.

"Fifteenth. The money obtained by Lawson and Fry from said bank on said note was used by them in their operations in said oil field for the purpose for which said loan was made and obtained by them.

"Sixteenth. At the time of the execution of said note Mrs. Sunetta M. Turner, who signed the same as one of the makers, was the wife of defendant D. McNeill Turner.

"Seventeenth. On the 20th day of February, 1919, the date of the judgment herein, after applying all credits, there was due the First National Bank of Goliad, Tex., on 'the judgment obtained by said bank in its suit against said T. J. Lawson and Jesse S. Fry in cause No. 2236, the First National Bank of Goliad, Tex., v. T. J. Lawson and Jesse S. Fry, the sum of $5,373.80, with interest thereon from said 20th day of February; A. D. 1919, until paid at the rate of 10 per cent. per annum.

"Eighteenth. Ten per cent. on the amount of the balance due on said judgment is the reasonable amount of the attorney's fees due plaintiff in this cause.

"Conclusions of Law.

"From the foregoing facts I find the following:

"First. The $10,000 note sued on having been executed by the makers for the purpose of obtaining money thereon and same having been indorsed without recourse by Wilson and Priday and returned to D. McNeill Turner, one of the makers, for the purpose of being used by him to obtain money in furtherance of the original purposes of the makers of said note, including the defendant Frank Rabb, same was constructively delivered to the payees Wilson and Priday and the subsequent negotiations of said note to the First National Bank of Goliad, as found in the preceding findings of fact, constituted delivery of said note to said First National Bank of Goliad, and T. J. Lawson, Jesse S. Fry, and D. McNeill Turner, as principals, and Frank Rabb, as surety, became and were liable to the First National Bank of Goliad, the holder thereof, for the payment of said note, principal, interest, and attorney's fees, according to the terms thereof.

"Second. Since said note is held by the plaintiff herein in trust for the use and benefit of the First National Bank of Goliad and as collateral security to the payment of the note

218 S.W.—39

of Lawson and Fry for $6,000, which was merged in the judgment in said cause numbered 2236, First National Bank of Goliad v. T. J. Lawson and Jesse S. Fry, referred to in the findings of fact hereof, and plaintiff is entitled to recover against the defendants herein only the amount of the balance due on said judgment, with interest thereon' and costs and 10 per cent. additional thereon as reasonable attorney's. fees and all costs in this behalf incurred.

"Third. Mrs. S. M. Turner labored under the disability of coverture at the time she executed the note sued on herein, and plaintiff is not entitled to judgment herein against her.

"Fourth. The payment and satisfaction of the judgment in this cause should operate to satisfy and discharge the judgment of the district court of Goliad county, Tex., hereinbefore referred to.

"Fifth. I accordingly conclude that plaintiff William Seidel, as trustee for the use and benefit of the First National Bank of Goliad, Tex., is entitled to judgment against defendants T. J. Lawson, Jesse S. Fry, and D. McNeill Turner, as principals, and Frank Rabb, as surety, in the sum of $5,911.18, being the amount of the principal, interest, and attorney's fees to which said bank is entitled on the note sued on herein, with interest from the 20th day of February, A. D. 1919, until paid at the rate of 10 per cent. per annum and all costs in this behalf incurred, which judgment shall be 'in full settlement, satisfaction, and discharge of the balance due on the judgment in the district court of Goliad county, Tex., above referred to, and that plaintiff should take nothing by this suit against defendant Mrs. Sunetta M. Turner, and that she go hence without day with her costs."

The appeal is by Frank Rabb alone. No request was made for additional findings of fact, and the criticisms directed at the findings made are believed by us to be unimportant. It is contended, in effect, that the second finding of fact is erroneous in that it is subject to the construction that the court found the note had been left with Turner and Lawson with authority to negotiate same with any person who would lend money thereon. There was nothing said to or by Rabb concerning negotiation of the note to others than Wilson and Priday in the event they should fail or refuse to complete the loan. It was contemplated that Wilson and Priday would accept the note and advance the money, and the contingency of refusal on their part was not discussed.

[1] The statement in the fourth finding that the note was never delivered "in the sense that they advanced any money thereon" is objected to. We see no ground for objection to the statement. The note undoubtedly passed into the actual possession of the payees, but only for the purpose of having it indorsed by them to aid in the further negotiation of the note to some other person.

The first question raised by, appellant is submitted in his proposition submitted on page 5 of the brief, under the first seven assignments of error, which are not numbered as prescribed by the rules. The contention,

briefly stated, is that the note was never delivered to the payees named therein, and therefore it never became a valid obligation against appellant, who was an accommodation maker. There is no contention that there was an express agreement that the note should be discounted by Wilson and Priday and no other person. The credit of appellant was extended for the purpose of enabling the other makers to procure money to be used for .certain purposes. No element of diversion enters into the case, so far as is disclosed by any contention of appellant, unless it consisted in failing to obtain the money from the payees named therein. There is a conflict of authority on the question raised. In Corpus Juris, vol. 8, p. 281, we find the following text: '

"Where accommodation paper is made payable to a particular person or bank, it has been held no diversion that money has been advanced on it by a third person, but otherwise where there was an express agreement that the money should be procured only from the payee. In any event, this is the rule where the paper is indorsed pro forma by the payee, or where it is indorsed by him and the proceeds are paid to him in cash, or if indorsed by him in blank without recourse and redelivered to the maker .to negotiate for the payee's benefit.

"But on the other hand, it has been held to the contrary that, where a note is made payable to a bank, or is negotiable and payable at a particular bank, payable to the cashier thereof, it carries on its face clear evidence that it was never intended to become binding or to have a legal inception unless discounted at the bank mentioned, and consequently it cannot be transferred to a private individual so as to bind accommodation parties. This seems to be the rule in Massachusetts, North Carolina, Ohio, and Wisconsin. In New York the rule is that, if the accommodation paper was made for the special purpose of enabling the party accommodated to borrow of the payee, it is a diversion for a holder with notice of this limitation, to borrow elsewhere."

The authorities are collated by the editor. We believe the weight of authority is to the effect that under the facts stated, even though the indorsement of the payees had not been procured, the accommodation maker is liable on the note. This view is approved in Daniel on Neg. Instruments (6th Ed.) § 1190, and Randolph on Com. Paper, § 1655. It has been followed by this court in the case of Bull v. Latimer, 80 S. W. 252. In the case of Morris v. Morton, 14 Neb. 358, 15 N. W. 725, the facts were substantially the same as in this case. The court held there was a delivery to the payee, even though he did not accept the note for the purposes for which it was intended, but indorsed it without recourse and delivered to the maker to whom it had been entrusted. In support of the statement in Corpus Juris, above quoted, that, "in any event, this is the rule where the paper is endorsed pro forma by the payee," the cases of Hinterberger v. Weindler, 2 Ill. App. 407, and Meeker

v. Shanks, 112 Ind. 207, 13 N. E. 712, are cited. In the last-cited case the payee indorsed the note after it had been negotiated to another, and the court appears to have attributed no importance to such indorsement, but to have based its decision upon the rule that the accommodation makers would be liable even if the payee had never indorsed the note. The opinion contains an able presentation of the reasons relied upon to hold the accommodation maker liable upon notes negotiated to others than the payee. The Illinois case cited is not accessible. We regret being unable to read that case, and also those of Bank v. Strang, 72 Ill. 559, and Reynolds v. Moshier, 24 Ill. App. 471, which are also .cited in Corpus Juris.

[2] We conclude that there is no merit in appellant's contention as made in said proposition, and therefore overrule said assignments of error.

Appellant has suggested in his brief that there is a conflict in the opinions in the cases of Bull v. Latimer, supra, and Eck v. Schuermeyer, 29 S. W. 241, and we are of the opinion that this is true. In the case of Battle v. Cushman, 33 S. W. 1037, there are expressions which indicate a view contrary to that expressed in the case of Bull v. Latimer; but the decision is based largely upon the proposition that there was a diversion by reason of the violation of special agreements, and that the note was not received in due course of business because received from one of the makers, and therefore would be subject to equities existing in favor of the surety. We respectfully submit that in deciding the case the fact that the note was payable to "C. S. Smith or bearer" was not given the weight to which it was entitled. It seems to be well established that such a note is in legal effect the same as one payable to bearer. Corpus Juris, vol. 8, § 291. If this be correct, there was no circumstance to support the theory that the note was not received in due course, except that it had not been negotiated until three months after its date.

[3] The note in this case was indorsed by the bank to plaintiff, who thereby became the holder of the legal title to the chose in action evidenced thereby. He could sue thereon in his name, or suit could have been brought in the name of the bank as the beneficial owner. A suit by the holder of the legal title is subject to equities which the makers may have against the beneficial owner. In this case appellant by his pleading alleged that the bank was the real owner, and that payments had been made the bank which should be credited on said notes. In answer to this plea plaintiff admitted that he held the note for the bank. The judgment is in favor of plaintiff, as trustee for the use and benefit of the bank.

[4, 5] There can be no doubt that the plaintiff, as the legal owner of the chose in action, could maintain the suit and procure a judg-

ment in his own name, even though he admitted in his pleading that the equitable title was in the bank. City of San Antonio v. Reed, 192 S. W. 549, and cases cited; also, Wimbish v. Holt, 26 Tex. 674; Hooper v. Hall, 30 Tex. 154. Even though the suit was not brought for the benefit of the bank, the issue was raised by defendant that the bank was the equitable owner, and defenses were asserted based on credits alleged to be chargeable against the bank. If it was error to stipulate that the judgment was for the benefit of the bank, the error could be corrected in this court by eliminating that provision, for there can be no doubt of the right of the holder of the legal title to a judgment, subject to the equities shown to exist against the beneficial owner. However, when appellee insists upon raising the issue that there is a beneficial owner and asserts equities, it appears to us to be proper for the court to find on the issue thus raised, and, if he sustains the contention, make the judgment conform to his finding. The beneficial owner is not a necessary party to the suit, nor need the holder of the legal title sue as trustee, or state that he sues for the benefit of the equitable owner.

We conclude that there is no merit in the contentions relating to the form of the judgment.

Appellant states that he has filed a motion to certify the question of his liability on the note. We find no such motion, nor does the docket disclose that such a motion was filed. If appellant is of the opinion that he is entitled to have the question certified on the ground that we have rendered an opinion in conflict with that of another Court of Civil Appeals, and that he should avail himself of such right in preference to resorting to an application for writ of error, he is at liberty to file a motion to that effect, conditioned upon the overruling of his motion for rehearing.

Judgment affirmed.