AMERICAN FIBER GLASS, INC., et al., Appellants,

v.

GENERAL ELECTRIC CREDIT CORPORATION, Appellee.

No. 17698.

Court of Civil Appeals of Texas, Fort Worth.

Oct. 24, 1975.

Rehearing Denied Nov. 21, 1975.

Robert O'Donnell, Dallas, for appellants.

Hudson, Keltner, Smith, Cunningham & Payne, and Hershel R. Payne, Fort Worth, for appellee.

## OPINION

SPURLOCK, Justice.

Appellee, General Electric Credit Corporation, brought this action against appellants, American Fiber Glass, Inc., Admiral Corwin Mendenhall, and D. V. Wiles, seeking payment of an indebtedness owed appellee by the appellants. American Fiber Glass was a company dealing in the retail sales of boats and motors. G. E. Credit is a finance company which financed the boats and motors for American Fiber Glass. Mendenhall is one of the founders of American Fiber Glass, a substantial stockholder, and a member of its Board of Directors, and is an expert in the field of management consulting.

On March 11, 1973, American Fiber Glass entered into a retail paper agreement with G. E. Credit by which the latter agreed to purchase the installment contracts, chattel mortgages, notes and other choses in action (accounts) of persons purchasing boats and motors and equipment from American Fiber Glass. At the same time, Mendenhall and Wiles executed a guaranty agreement by which they assured G. E. Credit the faithful performance of the obligations owed by American Fiber Glass to G. E. Credit and the prompt payment and performance of any other debt or obligation of any kind or character of American Fiber Glass to G. E. credit.

On April 2, 1973, about a month later, a separate agreement was entered into between American Fiber Glass and G. E. Credit by which the latter would also finance the actual inventory of American Fiber Glass. This letter agreement was signed by American Fiber Glass by its president and secretary-treasurer, but not by Mendenhall or Wiles.

Subsequently, American Fiber Glass defaulted in its obligations to G. E. Credit and the latter brought suit under the inventory financing agreement against American Fiber Glass and its guarantors. The guaranty agreement was never terminated. The case was tried before the court without the aid of a jury. Defendants appeal the verdict rendered against them in the amount of $38,161.59.

We affirm.

■ By his first point of error D. V. Wiles asserts that the trial court erred in rendering judgment against him because the evidence was insufficient to support the judgment because G. E. Credit never proved that he signed the guaranty agreement.

In the answer of the defendants, both Wiles and Mendenhall each stated that they did execute a guaranty letter but the intent of the guaranty letter was not intended to guarantee the payment of any debt accruing as a result of a floor-plan arrangement.

Then by their answer this defendant has admitted the execution of the guaranty letter.

A copy of the guaranty agreement was attached to plaintiff's petition. Plaintiff alleged the same was executed by each of the defendants. The pleading and this cause of action is founded on this guaranty agreement. The defendants did not file a sworn pleading or affidavit denying the execution of the instrument made the basis. of the suit. This instrument was admitted into evidence without objection. We hold that it was not necessary for plaintiff to prove execution of the guaranty agreement.

Rule 93, T.R.C.P., provides:

"A pleading setting up any of the following matters, unless the truth of such matters appear of record, shall be verified by affidavit.

".      .      .      .      .

"(h) Denial of the execution by himself or by his authority of any instrument in writing, upon which any pleading is founded, in whole or in part, and charged to have been executed by him or by his authority, and not alleged to be lost or destroyed. . . . In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved."

In *VanHuss v. Buchanan*, 508 S.W.2d 412 (Fort Worth Civ.App., 1974, writ dism.) this Court, speaking through Justice Brewster, stated:

"In this case (appellant) did not deny under oath the execution of the note sued on as is required by Rule 93, Texas Rules of Civil Procedure. Therefore, it was not necessary that plaintiff prove execution of the note by her. It was only necessary under those circumstances that the note be introduced into evidence in order to prove up its terms."

We overrule this point.

By their second point of error, the defendants, Wiles and Mendenhall, assert the court erred in rejecting their defense of novation.

Appellants argue that since Mendenhall and Wiles were unaware of the floor-plan agreement made in April, such agreement was a novation of the agreement for which they were guarantors, and that therefore they are not liable for any obligations arising out of the later floor-plan transactions. They also maintain that the document they signed was a "trust receipt" and such is no longer recognized under the Uniform Commercial Code. The guaranty agreement entered into between G. E. Credit and Mendenhall and Wiles provides in part as follows:

"As an inducement to you to purchase or otherwise acquire any notes, drafts, conditional sale contracts, lease agreements, chattel mortgages, accounts receivable, *trust receipts or other choses in action*, (herein called 'Accounts') bearing the signature as maker, endorser, assignor, trustee, mortgagor or in any other capacity of American Fiberglass, Inc., of 2402 North Beckley, Lancaster, Texas 75146 (hereinafter called 'Dealer'), and in consideration of your so purchasing or otherwise acquiring any one or more Accounts but without in any way binding you to do so, the undersigned does hereby guarantee to you, and in the event that this instrument be signed by two or more guarantors, the undersigned do hereby jointly and severally guarantee to you the due, regular and *punctual payment of any sum or sums of money which Dealer now owes you or which Dealer shall at any time or from time to time hereafter owe you, whether evidenced by note or other instrument or by open account or otherwise* and whether it represents an original balance, a balance reduced by part payment or a deficiency after sale of collateral or otherwise and *does hereby further guarantee due, regular and punctual payment and prompt performance of any other debt or obligation of any kind or character of Dealer to you*, and all losses, costs, attorney's fees or expenses which may be suffered by you by reason of default of Dealer or of any of the undersigned." (Emphasis ours.)

The plain terms of the guaranty agreement is to the effect that Mendenhall and Wiles guarantee all sums then owed or thereafter owed by American Fiber Glass to G. E. Credit.

After trial based upon evidence judgment was rendered for $38,161.59 which is shown by the evidence to be a debt owed G. E. Credit by American Fiber Glass and that American Fiber Glass is in default in this amount. It is clear that Wiles and Mendenhall owe G. E. Credit that amount under the guaranty agreement.

■ It is a well settled rule that parol evidence is not admissible to contradict or modify the provisions of a written guaranty agreement. *Earp v. First State Bank of Abilene*, 356 S.W.2d 178 (Eastland, Tex.Civ. App., 1962, ref., n. r. e.).

The inventory financing plan signed by G. E. Credit and American Fiber Glass is a trust receipt as contemplated by the guaranty agreement.

The following language from the comments to Section 9.101 of the Uniform Commercial Code is as follows:

"This Article sets out a comprehensive scheme for the regulation of security interests in personal property and fixtures. . . .

"Existing law recognizes a wide variety of security devices, which came into use at various times to make possible different types of secured financing. . . .

"Nevertheless, despite the great number of security devices there remain gaps in the structure. . . .

"The growing complexity of financing transactions forces us to keep piling new statutory provisions on top of our inadequate and already sufficiently complicated nineteenth century structure of security law. . . .

"The aim of this Article is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty."

Section 9.102(b) itself states:

"This chapter applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, *trust receipt*, other lien or title retention contract and lease or consignment intended as security." (Emphasis ours.)

■ Chapter 9 of the U.C.C. includes trust receipts and did not abolish them. It is our opinion that the guaranty agreement covers the indebtedness of American Fiber Glass arising out of its trust receipt with G. E. Credit.

In any event the cause of action asserted by G. E. Credit against American Fiber Glass is a "chose in action", and comes within the terms of the guaranty agreement.

Black's Law Dictionary, Revised 4th Edition, defines a chose in action as: "A personal right not reduced into possession, but recoverable by a suit at law."

This point is overruled.

■ By their third point the defense asserts that the trial court erred in rejecting the defendants' offsets and accounting.

Stated in summary form the arrangement the parties had was that American Fiber Glass would order motors from Chrysler. Chrysler would then call G. E. Credit who would then approve the credit. Chrysler would then ship the motors to American Fiber Glass; then G. E. Credit would verify with American Fiber Glass that they had received the motors and the amounts of the invoice and that the sale was complete. G. E. Credit would then pay Chrysler the amount of the invoice. Under this arrangement G. E. Credit then became liable to Chrysler for the amount of such sales which had the prior approval of G. E. Credit.

Mendenhall testified that there had been a burglary of the American Fiber Glass place of business and motors valued at $10,-

000–$11,000 had been stolen. These were motors that had been floor-planned by G. E. Credit. He testified that through hearsay he had heard that the burglars had been apprehended, the motors recovered and retained by the Dallas police department. The Internal Revenue Service then seized the motors because of the non-payment of sums due American Fiber Glass to the IRS. Thereafter, American Fiber Glass paid the IRS and then Chrysler repossessed the motors and therefore American Fiber Glass and its guarantors were entitled to this credit or offset. No one contends that G. E. Credit ever repossessed or came into possession of these motors.

C. E. Shumate, area credit manager for G. E. Credit, testified that G. E. Credit and Chrysler had held in abeyance their accounting between themselves pending the outcome of the present suit between G. E. Credit and American Fiber Glass.

Mr. Shumate testified that he had never heard of any merchandise being returned to Chrysler. There is no testimony in the record from anyone connected with Chrysler, the IRS, the police department, or anyone else having firsthand knowledge of any returned merchandise.

Shumate further testified that the defendants owed the amount recited in the judgment, and that all offsets, credits and payments had been allowed. The judgment is supported by the evidence and the judgment is not against the great weight and preponderance of the evidence.

The defendants contend that they are entitled to a credit or offset of the dealers reserve. In some instances a dealer would charge its customer more interest than that required by G. E. Credit. The difference would amount to a reserve. In the contract between American Fiber Glass and G. E. Credit dated March 11, 1973, entitled, "Agreement, Non-Recourse Plan", there was a provision contained therein in paragraph 16 providing that this reserve could be held by the company as additional security for and not in lieu of performance of

American Fiber Glass to G. E. Credit. This agreement further provided that G. E. Credit, in its sole discretion and without any obligation, could pay American Fiber Glass from time to time any part of this security fund, even though all recourse accounts purchased by them had not yet been liquidated completely. It also provided that losses occasioned by repossessions in some instances could be charged against the reserve.

Shumate testified that at the time of trial there was a negative or minus reserve balance.

We hold that there was evidence supporting the trial court's judgment and that the trial court's judgment was not against the great weight and preponderance of the evidence.

This point is overruled.

The judgment of the court is affirmed.