**FFP MARKETING COMPANY, INC., Appellant,**

v.

**LONG LANE MASTER TRUST IV and MTGLQ Investors, L.P., Appellees.**

No. 2–04–057–CV.

Court of Appeals of Texas, Fort Worth.

July 7, 2005.

Robert R. Bodoin, Mark Edwin Burge, Bodoin, Burnside, Burge & Agnew, P.C., Fort Worth, for appellant.

Matthew W. Moran, Bruce E. Miller, Vinson & Elkins L.L.P., Dallas, for appellees.

PANEL B: LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

## OPINION

LEE ANN DAUPHINOT, Justice.

Appellant FFP Marketing Company, Inc. ("FFP Marketing") appeals from a summary judgment granted by the trial court in favor of Appellees Long Lane Master Trust IV ("LLMT") and MTGLQ Investors, L.P. ("MTGLQ"). In six issues, FFP Marketing complains that the trial court erred in granting LLMT and MTGLQ's motion for summary judgment because: (1) LLMT, as a trust, did not have capacity to bring this suit except through a trustee, (2) the amount of the final judgment cannot be calculated from either the face of the judgment or the summary judgment record, (3) LLMT and MTGLQ did not conclusively prove legal ownership of the notes and guaranties, (4) the trial court erred by overruling FFP Marketing's special exceptions to LLMT and MTGLQ's motion for summary judgment, (5) the trial court erred by overruling FFP Marketing's objections to LLMT and MTGLQ's summary judgment evidence, and (6) the trial court erred by granting a permanent injunction to LLMT and MTGLQ where none was requested in their motion for summary judgment. Because we hold that LLMT and MTGLQ failed to prove their claims as a matter of law, we reverse the trial court's final judgment, including the injunction, and remand this case for trial on the merits.

## I. Background Facts

FFP Operating Partners, L.P. ("FFP Operating") operates a number of convenience stores and gas stations. In February and June of 1999, FFP Operating executed thirty-one promissory notes (the "Long Lane notes") in favor of Franchise Mortgage Acceptance Company ("FMAC"). In connection therewith, FFP Marketing executed guaranties of payment (the "Long Lane guaranties") in favor of FMAC for all thirty-one notes. FFP Operating also executed two additional notes in June of 1999 (the "MTGLQ notes") in favor of FMAC with corresponding guaranties (the "MTGLQ guaranties") by FFP Marketing. Loan and security agreements were executed in connection with all thirty-three transactions.

LLMT and MTGLQ assert that Bay View Franchise Mortgage Acceptance Company ("Bay View FMAC") became the successor in interest to FMAC with respect to the notes, guaranties, and associated loan documents and, in turn, assigned all of its interests to LLMT and MTGLQ. LLMT and MTGLQ also assert that since January 11, 2003, FFP Operating has failed to make payments on the notes as scheduled and therefore has been in default of its obligations under the Long Lane notes and the MTGLQ notes. On January 20, 2003, LLMT gave notice to FFP Operating of the defaults, accelerated the obligations under the Long Lane notes, and demanded payment. MTGLQ did the same with respect to the MTGLQ notes on February 21, 2003.

On August 20, 2003, LLMT and MTGLQ again sent default notices to FFP Operating and demanded payment under the guaranties from FFP Marketing. The notes went unpaid. LLMT asserts that as of September 8, 2003, the outstanding principal under the Long Lane notes was $13,212,199.30, with unpaid interest of $1,488,899.04, and late fees of $9,610.00. Likewise, MTGLQ asserts that as of the same date, the outstanding principal balance under the MTGLQ notes was $373,832.94, with unpaid interest of $41,059.29, and late fees of $917.52.

On April 24, 2003, LLMT and MTGLQ filed suit against FFP Operating and FFP Marketing (collectively "the FFPs") as a result of the alleged defaults under the thirty-three separate notes and guaranties. LLMT and MTGLQ subsequently filed a combined motion for summary judgment on their respective claims of default under the thirty-three notes and guaranties for the amounts due as of September 8, 2003.

In support of their motion for summary judgment, LLMT and MTGLQ offered the affidavit of Bradford A. Wagoner, Vice President of Asset Management of America, LLC, the general partner of Asset Management Company of America, L.P., the servicer of the Long Lane and MTGLQ notes, guaranties, and related loan documents. Attached to the Wagoner affidavit are sworn copies of those documents. In response, the FFPs amended their original answer to include a verified denial challenging LLMT's capacity to sue. They also filed a response to LLMT and MTGLQ's motion for summary judgment which included special exceptions to the summary judgment motion and evidence. Finally, the FFPs filed objections to the Wagoner affidavit.

The trial court held a hearing on the motion for summary judgment and on the objections and special exceptions filed by the FFPs. Before the trial court ruled, however, FFP Operating filed for bankruptcy protection under chapter 11 of the Bankruptcy Code and was nonsuited from this cause. The trial court entered a final judgment that expressly granted LLMT and MTGLQ's motion for summary judgment against FFP Marketing, overruled

all of FFP Marketing's special exceptions and objections to summary judgment evidence, and included an injunction pursuant to Texas Civil Practice and Remedies Code section 52.006(e).[1] This appeal resulted.

## II. SUMMARY JUDGMENT ON THE NOTES AND GUARANTIES

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movants met their summary judgment burden by establishing that no genuine issue of material fact exists and that the movants are entitled to judgment as a matter of law.[2] The burden of proof is on the movants, and all doubts about the existence of a genuine issue of material fact are resolved against the movants.[3] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.[4]

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.[5] Evidence that favors the movants' position will not be considered unless it is uncontroverted.[6] The summary judgment will be affirmed only if the record establishes that the movants have conclusively proved all essential elements of the movants' cause of action or defense as a matter of law.[7]

### B. Ownership of the Notes and Guaranties

#### 1. Parties' Contentions

In its third issue, FFP Marketing contends that the trial court erred in granting summary judgment because LLMT and MTGLQ failed to prove conclusively their legal ownership of the respective thirty-three notes and guaranties. LLMT and MTGLQ respond that the notes are negotiable instruments governed by the Texas Uniform Commercial Code, that Texas law requires that they establish that they either own *or* hold the notes and guaranties, and that they established their status as holders of the notes and guaranties. Further, they point out that FFP Marketing has not denied under oath FFP Operating's execution of the notes, its own execution of the guaranties, or the assignment of the notes and guaranties to LLMT and MTGLQ. LLMT and MTGLQ assert that absent such a sworn challenge, the notes, guaranties and other loan documents are to be received into evidence as fully proved. Accordingly, they argue that no issue of material fact exists as to this element of their cause of action.

In reply, FFP Marketing asserts that this court, along with most other Texas courts of appeals, has historically required a promissory note claimant to prove that he is both the owner *and* holder of the promissory note. In addition, FFP Marketing asserts that the Wagoner affidavit is internally inconsistent and thus insuffi-

---

1. TEX. CIV. PRAC. & REM.CODE ANN. § 52.006(e) (Vernon Supp.2004–05).

2. TEX.R. CIV. P. 166a(c); *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

3. *S.W. Elec. Power Co.*, 73 S.W.3d at 215; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Great Am. Reserve Ins. Co. v.*

*San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

4. *Great Am.*, 391 S.W.2d at 47.

5. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).

6. *Great Am.*, 391 S.W.2d at 47.

7. *Clear Creek Basin*, 589 S.W.2d at 678.

cient to support summary judgment. FFP Marketing also argues that LLMT and MTGLQ cannot for the first time on appeal assert their entitlement to summary judgment under the Texas Uniform Commercial Code because LLMT and MTGLQ did not plead or prove the elements of a suit on a negotiable instrument. In particular, FFP Marketing argues that LLMT and MTGLQ have not proven that the notes are negotiable instruments subject to article 3 of the Texas Uniform Commercial Code.

## 2. The Thirty-three Promissory Notes are not Negotiable Instruments; Proof of Ownership is Therefore Required

 The Texas version of the Uniform Commercial Code ("the Code") recognizes that the holder of a negotiable instrument has the right to enforce the instrument whether or not he is the instrument's lawful owner.[8] Under the Code, the "holder" of a financial instrument is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."[9] However, to be subject to the Code's governance, a promissory note must be a negotiable instrument.[10] A promissory note is a negotiable instrument subject to the Code if it is a written unconditional promise to pay a sum certain in money, upon demand or at a definite time, and is payable to order or to bearer.[11] The negotiability of an instrument is a question of law.[12]

In the case before us, both the Long Lane notes and the MTGLQ notes broadly define the maker's liability to include obligations found outside the four corners of the instruments. That is, each note includes the following:

FOR VALUE RECEIVED, the Borrower promises to pay to the order of the Lender the Principal Amount specified above, together with interest, according to the following terms and conditions:

1. *DEFINITIONS.* . . .

. . . .

"Obligations": All indebtedness and all liability, responsibility and obligation of the Borrower, each Guarantor or any of their respective Affiliates to the Lender or to any of the Lender's Affiliates for payment or performance, whether accrued or contingent, whether direct or indirect, whether arising from tort, contract, or otherwise, and whether incurred in the capacity of maker, co-indorser or obligor or as surety, guarantor or in any other capacity, under: (I) this Note, (ii) the Loan Agreement, (iii) the Indenture, (iv) each Guaranty, (v) the other Loan Documents, or (vi) any other present or future agreement, commitment, undertaking, instrument or obligation of the Borrower to the Lender or any Affiliate of the Lender with respect to the Facility, including any future advances (whether or not pursuant

---

8. Tex. Bus. & Com.Code Ann. § 3.301 (Vernon 2002); *Jernigan v. Bank One*, 803 S.W.2d 774, 776 (Tex.App.-Houston [14th Dist.] no writ) (indicating the Texas Business and Commerce Code allows for recovery by either the owner or holder of a promissory note).

9. Tex. Bus. & Com.Code Ann. § 1.201(21)(A) (Vernon Supp.2004–05).

10. *See id.* § 3.102(a) (Vernon 2002).

11. *Id.* § 3.104(a); *Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap, & Goetz, P.C.*, 99 S.W.3d 349, 357 (Tex.App.-Fort Worth 2003, no pet.).

12. *Cartwright v. Mbank Corpus Christi, N.A.*, 865 S.W.2d 546, 549 (Tex.App.-Corpus Christi 1993, writ denied).

to a written commitment); in each case whether due or to become due or whether now existing or subsequently incurred or arising. The term **"Obligations"** specifically includes but is in no way limited to principal, accrued interest and late payment processing fees under this Note, all advances made by or on behalf of the Lender under the Loan Agreement, the Indenture or any other Loan Document, and all collection and other costs and expenses incurred by or on behalf of the Lender, whether incurred before or after judgment, and specifically includes all Obligations, as such term is defined in the Indenture.

This overarching definition is referenced in several sections of the notes, including

- section 2.7, stating that default interest "shall accrue on the outstanding Principal Amount of this Note and the other Obligations at the Default Rate";
- section 3.1, discussing "security for the payment and performance of this Note and the other Obligations";
- section 5.1, stating that, upon the occurrence of a Default Event, "[t]his Note and all of the other Obligations shall at the option of the Lender become immediately due and payable without further notice or demand";
- section 5.3, stating that, after a Default Event, "[t]he Lender may, immediately and without notice, hold, apply, freeze or set-off, on account of any Obligation, (I) funds on deposit with the Lender ..., (ii) any funds that the

Lender ... may owe to the Borrower or any Guarantor ...; and (iii) any other funds or property, tangible or intangible, in or en route to the Lender's ... possession or control belonging or owed to the Borrower, [or] any Guarantor"; and

- section 7.2., providing that the "Lender shall be under absolutely no duty ... whatsoever to ... seek repayment of any Obligation from any particular source."

The presence of this definition in the notes defeats the sum certain requirement because one cannot determine from the face of each note the extent of the maker's liability.[13]

In addition, the notes fail the requirement for an unconditional promise because each note specifically "incorporates by reference" the terms of other documents, requiring one to examine those documents to determine if they place conditions on payment.[14] Although a promise is not made conditional by reference to a separate writing for information regarding rights and obligations with respect to collateral,[15] here, as security for each note's payment and performance, each note incorporates by reference *the terms* of both the loan and indenture agreements executed in conjunction with the transaction:[16]

### 3. *SECURITY.*

3.1. *Loan Agreement; Indenture.* As security for the payment and performance of this Note and the other Obligations, the Borrower has today

---

**13.** *See* Tex. Bus. & Com.Code Ann. § 3.104(a); *Bailey, Vaught, Robertson and Co. v. Remington Invs., Inc.*, 888 S.W.2d 860, 864 (Tex. App.-Dallas 1994, no writ) (indicating "sum certain" requirement is designed to provide commercial certainty in transfer of negotiable instruments and to make negotiable instruments functional equivalent of money).

**14.** *See* Tex. Bus. & Com.Code Ann. § 3.106(a).

**15.** *See id* § 3.106(b).

**16.** *See Resolution Trust Corp. v. 1601 Partners, Ltd.*, 796 F.Supp. 238, 240 (N.D.Tex.1992) (holding promissory note non-negotiable where deed of trust was incorporated by reference into promissory note).

signed and delivered the Loan Agreement and the Indenture (as defined in the Loan Agreement), granting the Lender a first lien and security interest in the "Collateral" and the "Trust Property", as defined in the Loan Agreement. All of the terms of the Loan Agreement and the Indenture are incorporated into this Note by reference, with the same effect as if they were reprinted here in full.

Each note also incorporates by reference the waivers, consents, and acknowledgments of the maker found in other loan documents.[17] Thus, each note is governed by the terms of another writing, requiring one to look outside the note to determine if payment is conditional or if the terms of that document alter the rights with respect to payment. Accordingly, we conclude that the notes in this case are not negotiable instruments.[18] Because the promissory notes in this case are not negotiable instruments, the Code does not govern their enforcement; contract law does.

 While negotiation or assignment can change ownership of a promissory note,[19] the endorsement of a non-negotiable promissory note does not create a presumption of ownership in the transferee.[20]

Thus, to recover on a non-negotiable promissory note, the holder must establish his status as the instrument's legal owner.[21] This same proof is required to establish LLMT and MTGLQ's right to recover on the promissory notes through the guaranties.[22] A general denial is sufficient to raise the issue of legal ownership and places the burden on the plaintiff to prove his status.[23]

### 3. LLMT and MTGLQ's Evidence of Ownership Is Internally Controverting

In support of their motion for summary judgment, LLMT and MTGLQ offered the affidavit of Bradford A. Wagoner, Vice President of their loan servicing agent. Attached to the Wagoner affidavit are sworn copies of the notes, guaranties, and related loan documents, including assignment documents evidencing assignment of the mortgages from Bay View FMAC (the alleged successor in interest to FMAC) to LLMT and MTGLQ. FFP Marketing filed no sworn challenge to the execution of the notes, guaranties, or related loan documents, or to the genuineness of the assignment of those instruments to LLMT and MTGLQ. On appeal, LLMT and

17. *See Cont'l Nat'l Bank of Fort Worth v. Conner,* 147 Tex. 218, 214 S.W.2d 928, 931 (1948) (indicating that an otherwise negotiable instrument can be rendered non-negotiable if it is burdened with the conditions of another agreement).

18. *See* TEX. BUS. & COM.CODE ANN. §§ 3.104(a), 3.106(a); *Cont'l Nat'l Bank of Fort Worth,* 214 S.W.2d at 931; *Bailey, Vaught, Robertson and Co.,* 888 S.W.2d at 864; *Resolution Trust Corp.,* 796 F.Supp. at 240.

19. *See Dillard v. NCNB Tex. Nat'l Bank,* 815 S.W.2d 356, 360 (Tex.App.-Austin 1991, no writ), *overruled on other grounds, Amberboy v. Societe de Banque Privee,* 831 S.W.2d 793, 797 (Tex.1992).

20. *See Diversified Fin. Sys.,* 99 S.W.3d at 357.

21. *See id.* at 353; *Dillard,* 815 S.W.2d at 359 (requiring plaintiff to establish ownership to recover in case involving non-negotiable promissory note); *see also Nitishin v. Fed. Debt Mgmt., Inc.,* No. 05–95–00531–CV, 1996 WL 76232, at *4 (Tex.App.-Dallas Feb. 21, 1996, no writ) (not designated for publication) (indicating where a note is non-negotiable, a transferee can still recover as the owner of the note).

22. *See Universal Metals & Mach., Inc. v. Bohart,* 539 S.W.2d 874, 877–78 (Tex.1976).

23. *See* TEX.R. CIV. P. 92; *Schindler v. AG Aero Distribs., Inc.,* 502 S.W.2d 581, 585 (Tex.Civ. App.-Corpus Christi 1973, no writ).

MTGLQ argue, in effect, that FFP Marketing's failure to file a verified plea challenging the execution of the instruments or the genuineness of the assignments precludes it from asserting that the evidence is insufficient to prove as a matter of law that LLMT and MTGLQ are both the legal owners and holders of the respective notes and guaranties. We disagree.

■ The absence of a sworn plea challenging the execution of an instrument or the genuineness of an assignment only affects waiver of a challenge to the execution of the instrument or the genuineness of the assignment; it does not preclude a party from arguing that the evidence is insufficient to support summary judgment.[24] Thus, FFP Marketing is not precluded on appeal from arguing that the evidence is insufficient to establish LLMT's and MTGLQ's status as legal owners and holders of the notes and guaranties.

On the other hand, a photocopy of a note attached to the affidavit of the holder, who swears that it is a true and correct copy of the note, is sufficient as a matter of law to prove the status of owner and holder of the note absent controverting summary judgment evidence.[25] In this case, however, controverting evidence is provided by the Wagoner affidavit and attachments. Specifically, FFP Marketing asserts that the Wagoner affidavit is internally inconsistent, and thus insufficient to support summary judgment, because Wagoner asserts in the affidavit that LLMT and MTGLQ are the beneficial owners and holders of the notes and guaranties, not the instruments' lawful owners. We agree.

■ Rule 166a(c) of the Texas Rules of Civil Procedure provides in part that a summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted.[26] Here, the affidavit testimony of Wagoner directly contradicts the summary judgment evidence attached to his affidavit. In his affidavit, Wagoner states that LLMT is the current "holder and beneficial owner" of the Long Lane notes, the Long Lane guaranties, and related loan documents. Likewise, in his affidavit, Wagoner states that MTGLQ is the current "holder and beneficial owner" of the MTGLQ notes, the MTGLQ guaranties, and related loan documents. But attached to the Wagoner affidavit are copies of the notes, guaranties, and related loan documents, including evidence of assignment of *legal* ownership of those documents to LLMT and MTGLQ.

In his affidavit, Wagoner does not explain the inconsistency between the assertion in the affidavit that the ownership is beneficial and the implication in the attachments that the ownership is legal, nor do LLMT and MTGLQ attempt to explain the

---

**24.** *See* Tex.R. Civ. P. 93(7), (8); *Vahlsing v. Collier Cobb & Assocs. of Dallas, Inc.*, 560 S.W.2d 117, 117–118 (Tex.Civ.App.-Dallas 1977, no writ) (indicating failure to file sworn plea waives challenge to genuineness of assignment, it does not dispense with proof of the existence of the transfer); *Am. Fiber Glass, Inc. v. Gen. Elec. Credit Corp.*, 529 S.W.2d 298, 300 (Tex.Civ.App.-Fort Worth 1975, writ ref'd n.r.e.) (indicating failure to file sworn plea waives challenge to execution of note, but that note must be introduced into evidence to prove its terms); *see also Clear Creek Basin*, 589 S.W.2d at 678 (indicating that failure to file response does not preclude one from arguing on appeal that evidence is insufficient as a matter of law to support summary judgment).

**25.** *Zarges v. Bevan*, 652 S.W.2d 368, 369 (Tex. 1983).

**26.** Tex.R. Civ. P. 166a(c).

inconsistency on appeal. This inconsistency is sufficient to raise an issue because there is a difference under Texas law between the beneficial or equitable owner of a promissory note and the note's legal owner.[27]

▮ For example, under Texas law, the legal owner of a promissory note may maintain a cause of action even though actual or beneficial ownership of the note lies in another.[28] The beneficial owner of a promissory note is not even a necessary party to a suit on the note.[29] Importantly, it is legal ownership that must be proved to enforce a note.[30] Thus the inconsistency between the Wagoner affidavit and its attachments is sufficient to establish a genuine issue of material fact precluding summary judgment.[31] Resolving all conflicts in the evidence in favor of FFP Marketing, we hold that a genuine issue of material fact exists as to the current ownership of the notes and guaranties; consequently, LLMT and MTGLQ did not prove legal ownership of the notes and guaranties as a matter of law.[32] Accordingly, we sustain FFP Marketing's third issue.

▮ Because of our disposition of this issue we need not address the remainder of FFP Marketing's issues; in the interest of judicial economy, however, we will address FFP Marketing's fourth issue to the extent that it argues that LLMT and MTGLQ failed to conclusively prove the current balance due under the notes and guaranties.[33]

## C. Amount Due

In its fourth point, FFP Marketing contends that the trial court erred by granting summary judgment based on an aggregated amount due and owing on the thirty-three separate promissory notes and guaranties. In addition, FFP Marketing asserts that the trial court erred in granting summary judgment because LLMT and MTGLQ failed to establish the applicable rate of interest on each note as a matter of law.

▮ In a cause of action on a promissory note, the plaintiff must establish the amount due on the note.[34] Generally, an affidavit that sets forth the total balance due on a note is sufficient to sustain an award of summary judgment.[35] Detailed proof of the balance is not required.[36] However, the summary judgment evidence must establish the applicable rate of interest on a note as a matter of law, otherwise the movants have failed to meet their summary judgment burden to establish the amount due on the note.[37] Further, where an affidavit submitted in support of sum-

---

27. *See Russell v. People's Nat'l Bank of Belton*, 2 S.W.2d 961, 962 (Tex.Civ.App.-Austin 1928, writ ref'd); *Rabb v. Seidel*, 218 S.W. 607, 610–11 (Tex.Civ.App.-San Antonio 1920), *rev'd on other grounds*, 250 S.W. 420 (Tex. Com.App.1923).

28. *Russell*, 2 S.W.2d at 962; *Rabb*, 218 S.W. at 610–11.

29. *Rabb*, 218 S.W. at 611.

30. *See Diversified Fin. Sys.*, 99 S.W.3d at 354.

31. *See* Tex.R. Civ. P. 166a(c).

32. *See Harwell*, 896 S.W.2d at 173.

33. *See* Tex.R.App. P. 47.1.

34. *See e.g., Diversified Fin. Sys.*, 99 S.W.3d at 357.

35. *Martin v. First Republic Bank, Fort Worth, N.S.*, 799 S.W.2d 482, 485 (Tex.App.-Fort Worth 1990, writ denied).

36. *Hudspeth v. Investor Collection Servs. Ltd. P'ship*, 985 S.W.2d 477, 479 (Tex.App.-San Antonio 1998, no pet.).

37. *See Bailey, Vaught, Robertson and Co.*, 888 S.W.2d at 867.

mary judgment lumps the amounts due under multiple notes with varying terms and provisions, an ambiguity can arise as to the balance due, precluding summary judgment.[38]

■ In the case before us, each note provides for interest at the lesser of the interest rate specified in the note or at the highest rate allowed by Connecticut law. Similarly, in the event of default, each note provides for interest at the lesser of five percent over the note rate or the highest rate allowed by Connecticut law. Because nothing in the summary judgment evidence establishes the highest rate allowed under Connecticut law or, consequently, the actual default rate charged on any single note, we conclude that the evidence is insufficient to prove the applicable rate of interest for each note as a matter of law.[39]

■ Further, Wagoner's affidavit provides that as of September 8, 2003, FFP Marketing owed $13,212,199.30 in principal, $1,488,899.04 in interest, and $9,610.00 in late fees, for a total of $14,710,708.34 on the thirty-one Long Lane notes. Similarly, the affidavit also provides that as of the same date, FFP Marketing owed $373,832.94 in principal, $41,059.28 in interest, and $917.52 in late fees, for a total of $415,809.24 on the two MTGLQ notes.

FFP Marketing argues that Wagoner is an interested witness and that by providing only aggregated amounts due respectively under the thirty-one Long Lane notes and the two MTGLQ notes, the Wagoner affidavit fails the require-

ment of rule 166a(c) that an interested witness affidavit be easily controvertible.[40] Specifically, FFP Marketing argues that the assertion of an aggregated amount due effectively denied it the opportunity at the trial court level to controvert the alleged amounts due on each note.

LLMT and MTGLQ respond that the assertion of a lump sum is sufficient to establish the amounts due on each note. In support of their assertion, LLMT and MTGLQ argue that this court, in *L & T Charters, Inc. v. American National Leasing Company,* recently held that an affidavit asserting a single collective balance due under multiple leases was sufficient to established a sum certain.[41] We disagree with LLMT and MTGLQ's interpretation of our holding in that case. In *L & T Charters,* the issue was not whether the *evidence* was sufficient to support the motion for summary judgment, but rather, whether the *final judgment* was sufficiently certain so that it could be understood and enforced by a ministerial officer.[42] Accordingly, this court's holding in *L & T Charters* has no application to the case before us. After reviewing the summary judgment evidence, we conclude that the assertion of a lump sum balance, given multiple notes with varying principal balances and interest rates, creates an ambiguity sufficient to preclude summary judgment.[43] Thus, because (1) no summary judgment evidence establishes the applicable interest rate on each note as a matter of law, and (2) an ambiguity exists in the summary judgment proof as to the

**38.** *See Gen. Specialties, Inc. v. Charter Nat'l Bank–Houston,* 687 S.W.2d 772, 774 (Tex. App.-Houston [14th Dist.] 1985, no writ).

**39.** *See Bailey, Vaught, Robertson and Co.,* 888 S.W.2d at 867.

**40.** *See* Tex.R. Civ. P. 166a(c).

**41.** *See* No. 2–03–379–CV, 2004 WL 1219079, at *2 n. 3 (Tex.App.-Fort Worth June 3, 2004, no pet.) (mem. op.).

**42.** *See id.* at *1.

**43.** *See Gen. Specialties, Inc.,* 687 S.W.2d at 774.

amounts due on each note, we hold that LLMT and MTGLQ failed to establish the amounts due on each note as a matter of law.[44] Accordingly, we sustain FFP Marketing's fourth issue to the extent that it contends that LLMT and MTGLQ failed to conclusively prove the current balance due on each note and guaranty.

### III. Conclusion

Having held that LLMT and MTGLQ failed to establish as a matter of law (1) legal ownership of the promissory notes and guaranties and (2) the amount due on each note and guaranty, we reverse the trial court's final judgment, including the injunction, and remand the case to the trial court for trial on the merits.

---

**44.** *See id.; Bailey, Vaught, Robertson and Co.,* 888 S.W.2d at 867.