Laura M. BROWN and Robert
L. Brown, Appellants,

v.

EMC MORTGAGE CORPORATION,
Appellee.

No. 05–08–00914–CV.

Court of Appeals of Texas,
Dallas.

June 7, 2010.

Rehearing Overruled Dec. 14, 2010.

649

Michael Brinkley, Ft. Worth, TX, for Appellants.

William G. Compton, Andrews & Kurth, L.L.P., Dallas, TX, for Appellee.

Before Justices MORRIS, FITZGERALD, and FRANCIS.

## OPINION

Opinion By Justice MORRIS.

This is an appeal from a summary judgment foreclosing a mortgage lien and an order authorizing the sale of real property. Laura M. Brown and Robert L. Brown assert eight points of error contending the trial court erred in granting EMC Mortgage Corporation's two motions for summary judgment and ordering the sale of their property by EMC to satisfy its lien. We conclude the trial court properly granted summary judgment in favor of EMC but erred in the form of relief it granted. Accordingly, we reverse the trial court's order authorizing the sale of the Browns' property by EMC and remand the cause for rendition of a judgment and order of sale granting the proper relief. We affirm the trial court's judgment in all other respects.

### I.

The Browns filed this suit in 2005 against various parties including Aames Funding Corporation d/b/a Aames Home Loan. In their original petition, the Browns sought injunctive relief to prevent foreclosure on their home. The Browns amended their petition a year later to join EMC as a party and add claims for trespass, conversion, and violations of the Texas Fair Debt Collection Practices Act. The Browns asserted that their loan with Aames Home Loan was assigned to EMC in July 2005 and that an agent of EMC unlawfully entered the property while it was vacant and engaged in various malicious acts including ransacking the interior of the residence and stealing mortgage and

property-related documents.[1] EMC filed an answer and brought a counterclaim for foreclosure and damages.

EMC filed a traditional motion for summary judgment on the Browns' claims contending the acts complained of were not committed by an agent of EMC. EMC argued that it had no control over the person who committed the alleged acts of trespass, conversion, and unfair debt collection and, therefore, the company could not be held liable for the claimed damages. The trial court agreed with EMC, granted its motion, and ordered that the Browns take nothing by their claims against EMC.

EMC next filed a motion for summary judgment on its counterclaim for foreclosure and damages. EMC argued the uncontroverted evidence showed the Browns were in default on a note of which EMC was the owner and holder. EMC also stated that the evidence showed the debt had been declared due and payable and foreclosure was authorized by the note, deed of trust, and applicable law.

The Browns responded that EMC was not entitled to summary judgment because it failed to produce the original note as required by local rules of court. The copy of the note in the summary judgment evidence did not name the assignee on the "Endorsement and Assignment of Note" page and, therefore, did not show that EMC was the owner and holder. In the affidavit accompanying the note, however, Steven Durham, a default analyst for EMC, testified that EMC had purchased the note and was the note's legal owner and holder.

In response to the Browns' arguments, EMC produced the original note to the trial court and the Browns for inspection.

The court instructed that a copy of the original note be placed in the record. The copy of the original note in the record contains an "Endorsement and Assignment of Note" page on which EMC is named as the assignee of the note and deed of trust.

On February 19, 2008, the trial court signed a memorandum order granting EMC's motion for summary judgment on its counterclaim. Approximately two months later, the trial court signed an order authorizing EMC to sell the Browns' property at public auction pursuant to section 51.002 of the Texas Property Code. The Browns then filed a motion for new trial reasserting their challenge to the evidence of assignment of the note. The Browns also argued, for the first time, that EMC's enforcement of the lien was barred by the statute of limitations. Finally, the Browns argued that summary judgment on the claims against EMC was contrary to governing precedent. The motion for new trial was overruled by operation of law, and the Browns brought this appeal.

## II.

In their first three points of error, the Browns contend that EMC's summary judgment evidence is insufficient to prove its ownership of the note and liens at issue. The Browns argue that the "varying versions" of the note contained in the summary judgment record render the evidence internally contradictory, inconsistent, and unreliable. The Browns point to the fact that the version of the note sworn to by Steven Durham as being a "true and correct copy" is blank in the space intended for the name of the assignee on the en-

---

1. Accredited Home Lenders, Inc. as successor in interest to Aames Funding Corporation d/b/a Aames Home Loan filed a motion for summary judgment on all claims asserted by the Browns against Aames Home Loan. The trial court granted the motion and ordered that Accredited be severed as a party from the suit.

dorsement and assignment page. The original note later tendered to the court by EMC, however, bears the stamp "EMC MORTGAGE CORPORATION" in the space following the assignment language. The Browns make no argument and point to no evidence of any fraud in connection with the original note produced by EMC. The Browns argue, however, that the inconsistencies between Durham's affidavit and the documentary evidence create an unresolved material fact issue requiring reversal of the summary judgment.

The Browns rely on one case in particular to support their position. *See FFP Mktg. Co., Inc. v. Long Lane Master Trust IV*, 169 S.W.3d 402 (Tex.App.-Fort Worth 2005, no pet.). In *FFP*, the court reversed a summary judgment because the affidavit testimony directly contradicted the attached summary judgment evidence. *Id.* at 410. The affiant in *FFP* testified that the appellees were the holders and *beneficial* owners of the notes and guaranties at issue. *Id.* The loan documents attached to the affidavit, however, showed the appellees were assigned *legal* ownership of the notes and guaranties. *Id.* The court held that because *legal* ownership had to be proved to enforce the note, the inconsistency between the affidavit testimony and the attached documents created a genuine issue of material fact precluding summary judgment. *Id.* at 411.

Unlike the facts in *FFP*, in this case there is no inconsistency between the summary judgment affidavit and the attached documents that creates a genuine issue of material fact about ownership of the note. Durham testified in his affidavit that, in May 2005, EMC purchased and became the legal owner and holder of the promissory note secured by a deed of trust lien against the subject property. The attached copy of the note shows that the note was assigned without recourse but does not name the party to whom it was assigned. Although the note does not affirmatively show it was assigned to EMC, neither does it contradict Durham's testimony that it was.

Any inconsistency in the evidence arises by virtue of Durham's testimony that the incomplete copy of the note attached to his affidavit is a "true and correct copy" of the note. The Browns contend this alone renders Durham's testimony suspect and requires a jury to determine his credibility. The only difference between the copy of the note attached to Durham's affidavit and the original note tendered to the court is the stamp "EMC MORTGAGE CORPORATION" in the space provided to name the assignee. This "inconsistency" could raise an evidentiary question about Durham's credibility if there were a genuine dispute about whether the note was assigned to EMC. But we note that it was the Browns who added EMC as a party to this suit. In so doing, the Browns asserted in their petition that "[i]n or about July 2005, Plaintiffs' loan with Ames [sic] Home Loan was assigned to Defendant EMC." The Browns further asserted that EMC committed various wrongful acts "in seeking collection on its mortgage loan." As stated above, there is no evidence of any fraud in connection with the original note produced by EMC that shows its assignment to EMC. In light of the evidence proving the assignment and the Browns' pleadings, there is no material fact issue about the note's ownership.[2] On the rec-

---

**2.** The Browns argue for the first time in their reply brief that "there is a fatal gap in the chain of indorsements on the note" because EMC did not "prove the transactions between Bankers Trust and Aames." A reply brief may not be used to raise new issues, and this argument will not be considered. *See Dallas County v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.-Dallas 2006, pet. denied).

ord before us, Durham's testimony does not create a genuine issue of material fact. We resolve the Browns' first three points of error against them.

■ In their fourth point of error, the Browns contend the trial court erred in granting summary judgment in favor of EMC on their claims for trespass, conversion, and unfair debt collection practices because the ruling is contrary to controlling authority from this Court. The trial court granted summary judgment for EMC on the ground that the acts complained of by the Browns were committed by an independent contractor over which EMC had no control and, therefore, the company could not be held liable for the man's actions as a matter of law. The Browns argue this holding conflicts with our opinion in *EMC Mortgage Corp. v. Jones*. *See EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857 (Tex.App.-Dallas 2008, no pet.).

In *Jones*, we held there was sufficient evidence for a jury to infer that a man who entered the plaintiffs' home and engaged in unreasonable debt collection practices was an agent of EMC. *Id.* at 870. The evidence in *Jones* included a statement by the man to the plaintiffs that he "was there on behalf of EMC." *Id.* In addition, the man showed up at the house the day before the plaintiffs were sent an eviction letter from the law firm acting on behalf of EMC. *Id.* EMC presented no evidence to show the man at issue was not acting on its behalf and stated only that it had no record of a person representing EMC going to the property. *Id.*

The Browns assert the only difference between the facts in *Jones* and those presented in this case is that the plaintiffs in *Jones* were present at the time EMC's alleged agent entered the home. Contrary to the Browns' argument, however, there are many other significant differences be-

tween *Jones* and this case, both in the facts presented and the issues addressed. The summary judgment evidence here includes the testimony of the man the Browns allege acted as EMC's agent, Jeff Watson. Watson testified he was hired by Rich Co. Property Services to "determine the status" of the Browns' home and secure and winterize the house if he found it was vacant. Although Watson was aware that EMC was "involved in the matter," he stated this fact made no difference to his work and he received no instructions on how to do his job from EMC. EMC also presented the testimony of Brenda Ward, a Default Operations Assistant Manager for EMC. She testified EMC hired National Field Representatives to secure and winterize the Browns property. Unknown to EMC, NFR then hired Rich Co. Property Services to perform the work, and Rich Co. sent Watson. Ward testified EMC did not provide any of the tools, supplies, or materials for winterizing the property and did not provide any instructions to Rich Co. or Watson on how to do the work. Furthermore, Ward stated EMC did not know of the existence of Rich Co. or Watson at the time Watson performed the work on the Browns' home. This evidence supports EMC's contention that Watson functioned as an independent contractor over whom the company had no control and for whose actions the company could not be held liable. The issue of liability for work performed by an independent contractor was not addressed in *Jones*. Based on the foregoing, we conclude *Jones* is not controlling in this case. We overrule the Browns' fourth point of error.

■ In their fifth and eighth points of error, the Browns contend the trial court erred in granting summary judgment in favor of EMC on its claim for foreclosure because the claim is barred by the applicable statute of limitations. *See* Tex. Civ.

Prac. & Rem.Code Ann. § 16.035(a) (Vernon 2002). Under section 16.035 of the Texas Civil Practice and Remedies Code, a suit to foreclose on a lien must be brought within four years of the date the cause of action accrues or the lien becomes void. *Id.* § 16.035(d). According to the Browns, they received their first notice of acceleration of the debt from Aames Home Loan in July 2000, more than four years before EMC filed its counterclaim to foreclose. The Browns argue that, because the cause of action accrued more than four years before EMC brought its counterclaim, the lien is void and the summary judgment must be reversed.

■■■ Limitations is an affirmative defense that is waived if not pleaded. *See Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 814–15 (Tex.App.-Dallas 2008, no pet.). In this case, the Browns filed only a general denial to EMC's counterclaim for foreclosure and damages. In addition, there was no mention of the statute of limitations in the summary judgment pleadings. The Browns first raised the limitations issue in their motion for new trial. The failure to assert a statute of limitations defense until a motion for new trial waives the defense. *Id.* at 815. The Browns attempt to avoid waiver by arguing that EMC's failure to bring suit within the limitations period is "jurisdictional" and therefore not subject to waiver. They provide no argument or authority to support this assertion, however, and we have found none. We overrule the Browns' fifth and eighth points of error.

■■■ In their sixth point of error, the Browns contend the trial court erred in ordering their property be sold by EMC at public auction because this relief is inconsistent with the exclusive means of carrying out a judicial foreclosure of a mortgage lien. The Browns rely on Rule 309 of the Texas Rules of Civil Procedure which states that

> Judgments for the foreclosure of mortgages and other liens shall be that the plaintiff recover his debt, damages and costs, with a foreclosure of the plaintiff's lien on the property subject thereto, and, except in judgments against executors, administrators and guardians, that an order of sale shall issue to any sheriff or any constable within the state of Texas, directing him to seize and sell the same as under execution, in satisfaction of the judgment.

Tex.R. Civ. P. 309. It is undisputed that the judgment of foreclosure in this case was not against an executor, administrator, or guardian. Thus, rule 309 requires the order of sale "issue to any sheriff or any constable." Instead, the trial court's order authorizes EMC to sell the property at public auction to the highest bidder.

EMC argues that, because the order authorizing the sale of the property in this case is not a judgment *per se*, rule 309 does not apply. Rule 309 specifically states what type of order of sale must issue in a suit to foreclose a mortgage lien. If we were to accept EMC's argument, rule 309 could be avoided entirely by simply failing to mention the order of sale in the final judgment and issuing a separate order not complying with the rule.

EMC also argues that the trial court's order of sale is consistent with Texas law because it meets the requirements of chapter 51 of the Texas Property Code. Chapter 51 governs the specific methods of sale for foreclosures of liens and addresses deficiencies in both judicial and non-judicial foreclosures. Tex. Prop.Code Ann. § 51.0001 *et seq.*, (Vernon 2007). According to EMC, rule 309 is an anachronism that does not fit into the statutory scheme created by chapter 51. EMC asks us to ignore rule 309's requirement that the

property be sold by a sheriff or constable because this requirement is not also present in chapter 51. We decline to do so.

The requirement that the sale of the property in a judicial foreclosure be conducted by a sheriff or constable is clear, unambiguous, and does not conflict with any provision of chapter 51. Indeed, chapter 51 distinguishes between foreclosure sales conducted under the chapter and those conducted under a court judgment foreclosing the lien. *See id.* § 51.005(a)(2). Because nothing in chapter 51 conflicts with rule 309, we must assume that the legislature intended for judicial foreclosures to continue to be conducted by sheriffs or constables even after the enactment of chapter 51. Accordingly, the order of sale in this case is not in compliance with Texas law.

■ Finally, EMC argues the Browns have not shown reversible error because they cannot show they were prejudiced by the order authorizing the company to sell the property. EMC contends the result of the sale would be the same regardless of who conducts it and, therefore, the Browns cannot show they were harmed. We disagree.

Reversible error is shown when the trial court makes an error of law that probably causes the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1. In this case, the trial court's error was *the rendition of an improper judgment* under rule 309 of the rules of civil procedure. EMC was granted relief to which it was not entitled. This alone is sufficient to show harmful error. We sustain the Browns' sixth point of error. Because of our resolution of the sixth point of error, it is unnecessary for us to address the Browns' seventh point of error.

We reverse the trial court's order authorizing the public sale of the Brown's property by EMC and remand the cause for rendition of a judgment and order of sale in compliance with rule 309 of the Texas Rules of Civil Procedure. We affirm the trial court's judgment in all other respects.