AFFIRMED; Opinion Filed April 21, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00552-CV

**DIANE B. SANTIAGO AND P. SCOTT SANTIAGO, Appellants**
**V.**
**CENTRAL MORTGAGE COMPANY, Appellee**

On Appeal from the 199th Judicial District Court
Collin County, Texas
Trial Court Cause No. 199-04179-2011

## MEMORANDUM OPINION

Before Justices Lang, Stoddart, and Schenck
Opinion by Justice Lang

Appellants Diane B. Santiago and P. Scott Santiago ("the Santiagos") filed this lawsuit against appellee Central Mortgage Company ("Central") asserting claims pertaining to efforts by Central to enforce a deed of trust lien on their residence. Central filed a counterclaim in which it sought foreclosure pursuant to that lien. Following a bench trial, the trial court signed a final judgment in which it ordered, in part, that (1) the Santiagos take nothing against Central and (2) Central is entitled to non-judicial foreclosure.

On appeal, the Santiagos assert four issues. Specifically, the Santiagos contend the trial court erred by (1) "failing to file findings of fact and conclusions of law" as requested by them and (2) rendering a take-nothing judgment against them, "since the parties had proven to the trial court that one or more instruments in the chain of ownership of the note and lien on which Central relies was executed by a person acting without proper capacity." Additionally, the

Santiagos assert the trial court's judgment is "void" because it purports to grant relief (1) "inconsistent with the exclusive means of carrying out a judicial foreclosure, for which [Central] pleaded" and (2) "not in conformity with the pleadings."

We decide the Santiagos's four issues against them. The trial court's judgment is affirmed. Because the law to be applied in this case is well settled, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute that in February 2004, the Santiagos obtained a home equity loan (the "Loan"). In connection with the Loan, Diane B. Santiago executed a promissory note (the "Note") in which she agreed to pay $190,400 plus interest to the "Lender," Carnation & Company, Inc. ("Carnation"). The Note was secured by a deed of trust executed jointly by the Santiagos (the "Deed of Trust") that encumbered their residence in Collin County, Texas (the "Property"). The Deed of Trust stated in part that Mortgage Electronic Registration Systems, Inc. ("MERS")[1] was acting as "a nominee for Lender and Lender's successors and assigns" and was "the beneficiary" under the Deed of Trust.

The Santiagos filed this lawsuit on October 3, 2011. Their live pleading at the time of the judgment complained of was a verified petition in which they (1) contended Central had wrongfully sought foreclosure of a claimed lien on the Property and (2) asserted statutory and common law claims pertaining to Central's acts.[2]

---

[1] MERS is "an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans." *Bierwirth v. BAC Home Loans Servicing, L.P*., No. 03–11–00644–CV, 2012 WL 3793190, at *1 n.2 (Tex. App.—Austin Aug. 30, 2012, pet. denied) (mem. op.).

[2] Specifically, the Santiagos requested that the trial court (1) declare that Central's actions violated the Texas Debt Collection Act ("TDCA"), *see* TEX. FIN. CODE ANN. §§ 392.001–392.404 (West 2006); (2) enjoin Central's actions which violate the TDCA; (3) render judgment in favor of the Santiagos for statutory damages, costs, and attorney's fees as provided by the TDCA; (4) prohibit any further non-judicial foreclosure or forcible detainer proceeding or attempted foreclosure sale or related act by Central, its affiliates, agents, successors or assigns, with respect to the Property; (5) award the Santiagos compensatory and exemplary damages as allowed by law; (6) award the Santiagos their reasonable and necessary attorney's fees, costs, and pre-judgment and post-judgment interest as allowed by law; (7) issue an order quieting title to the Property in the Santiagos, voiding any substitute trustee's deed, and removing such deed from the chain of title to the Property; and (8)

–2–

The Santiagos stated in relevant part in their live petition that an examination of the "public record available in Collin County" showed (1) an "[i]ndorsement on the Note to Flagstar Bank, FSB," ("Flagstar") dated February 23, 2004; (2) an "Assignment of Mortgage" dated July 22, 2009, (the "Assignment of Mortgage") in which "MERS as nominee for Carnation" purported to assign the Santiagos's mortgage to Central and which "appears to have been executed by Dorcas Tiller as Assistant Secretary of MERS"; (3) an "Appointment of Substitute Trustee apparently executed January 18, 2010, by Dorcas Tiller as Vice President of Central Mortgage Company"; and (4) a "Notice of Substitute Trustee's Sale giving notice that the Property is to be sold October 4, 2011." According to the Santiagos, because Carnation indorsed the Note to Flagstar at or about the time of the closing of the Loan and "no assignment of the Loan appears of record from Flagstar back to MERS," the Assignment of Mortgage was "void" for "lack of capacity on the part of MERS." Further, the Santiagos contended (1) the Assignment of Mortgage was "void" for "lack of capacity on the part of the person, Dorcas Tiller, signing as a putative officer of MERS when she was not duly constituted as such," but rather was "an employee of [Central] but not of MERS" and (2) as a result of the alleged defects respecting the documents and transactions described above, the appointment of the substitute trustee was "made without capacity by [Central]" and therefore the substitute trustee "lack[s] capacity" and the notice of the substitute trustee's sale was "given without capacity."

Central filed a combined general denial answer and counterclaim. Under the heading "Counterclaim" in that document were sections titled "Declaratory Judgment," "Judicial Foreclosure," and "Non-Judicial Foreclosure." In those sections, respectively, Central stated (1) it was requesting a declaratory judgment that it is "entitled to proceed with its foreclosure

enjoin any action to interfere with the Santiagos's exclusive use and possession of the Property, pending resolution of this case. On the same date this lawsuit was filed, the trial court signed a temporary restraining order that "immediately restrained" Central from pursuing "activity to seek or effect a foreclosure as to the Property or an eviction of [the Santiagos]."

proceedings"; (2) "[p]ursuant to TEX. R. CIV. P. 309, [Central] seeks a judgment for foreclosure, together with an order of sale issued to the sheriff or constable of the county where the Property is located directing the sheriff or constable to seize and sell the Property in satisfaction of the judgment"; and (3) "[Central] seeks non-judicial foreclosure pursuant to TEX. CONST. art. XVI § 50(a)(6) and TEX. R. CIV. P. 735(2) or 735(3), and TEX. PROP. CODE § 51.002 with respect to all Plaintiffs who are obligated for the Loan Agreement debt." Additionally, under the heading "Writ of Possession" in its answer/counterclaim, Central asserted in part "[i]f any person . . . occupies or claims possession of the Property after transfer of all right, title, and interest in the Property as a result of foreclosure, . . . [Central] requests a Writ of Possession from this Court in accordance with TEX. R. CIV. P. 310."

Following the trial court's denial of a motion for summary judgment filed by Central, a bench trial was held on February 3, 2014. At the start of trial, counsel for the Santiagos asked the trial court to take judicial notice of "the contents of its file" in this case and trial court cause number 199-02596-2011, a prior suit in the trial court between the same parties (the "Prior Suit").[3] The trial court stated judicial notice was taken as requested. Counsel for the Santiagos stated they had no evidence to introduce "other than to point back to the record."

Counsel for Central asserted in part during trial that Central had "counterclaimed for non-judicial foreclosure and writ of possession." Additionally, "Defendant's Exhibit 1," a copy of the Note, was admitted into evidence without objection.[4] The signature page of that copy of the Note bore the following typed notation: "Pay to the order of FLAGSTAR BANK, FSB without recourse this 23RD day of FEBRUARY 2004." Directly below those words were the typed

---

[3] The record shows the Prior Suit resulted in an August 19, 2011 "Default Home Equity Foreclosure Order" authorizing Central to proceed with foreclosure on the Property pursuant to the Deed of Trust.

[4] Also, copies of the Deed of Trust and payment records pertaining to the Loan were introduced and admitted into evidence as Defendant's Exhibits 2 through 5. Counsel for the Santiagos stated they had "no objection to admissibility" respecting any of the documents introduced into evidence by Central.

–4–

words "CARNATION & COMPANY, INC." Below those words were two blank signature lines, followed by the typed words "TYPED NAME AND TITLE OF SIGNATORY." No other words appeared in the notation.

Central's sole witness, James McPherson, testified he is Central's litigation supervisor. Counsel for Central asked McPherson, "Have you had an opportunity to review Central's documents and determine whether or not Central is the actual note holder?" McPherson responded, "Yes. We do have access to the original note."

On cross-examination, McPherson testified in part that he believes Defendant's Exhibit 1 "is a true copy of the note as it exists right now." Following McPherson's testimony, counsel for the Santiagos argued in part,

> I believe the Court will find [the copy of the Note in the file pertaining to the Prior Suit] bears an endorsement to Flagstar Bank, and that that's the—that's where the endorsements—that's the only endorsement, so that's where the endorsements stop.
> The Exhibit 1 that was shown to the witness here today I don't believe bears an endorsement to anybody, which—which leads me to the wisdom of Local Rule 4.1; that, if we're going to litigate about a note, that the original note will be produced and remained [sic] in custody of the Court.

The trial court stated that Defendant's Exhibit 1 and the copy of the Note filed in the Prior Suit appeared to be the same. Then, counsel for the Santiagos stated in part (1) "I apologize . . . I thought I'd seen an endorsement with a signature on it, and I don't find it" and (2) both versions of the Note in question bear a "typed endorsement in blank to Flagstar" and each such "endorsement" "appears to be unsigned."

The trial court's final judgment described above is dated February 3, 2014.[5] On March 5, 2014, the Santiagos filed a "Motion to Vacate Judgment" in which they restated their contentions

---

[5] The trial court stated in part in the final judgment as follows:

The Court . . . finds that the loan agreement between Plaintiffs and Defendant is in default. Defendant is, therefore, entitled to the relief sought in Defendant's Amended Answer and Counter-Claim; and therefore,

described above and, further, argued in part (1) the "purported copy of the Note" before the trial court "did not appear to be indorsed from Carnation & Company, Inc., the original payee of the Note, to anyone (other than a blank indorsement block that named Flagstar Bank)"; (2) "[t]here was no completed indorsement to Flagstar or further indorsement to Defendant or anyone else claiming to be in the chain of ownership for purposes of the foreclosure"; and (3) "[t]he Judgment grants relief under [Texas Rule of Civil Procedure] 310, but such relief is inappropriate and incompatible with relief under [Texas Rule of Civil Procedure] 736, which the Judgment also seeks to grant." The Santiagos's motion to vacate judgment was overruled by operation of law.

On March 25, 2014, the Santiagos filed a "Notice of Past Due Findings of Fact and Conclusions of Law."[6] No findings of fact or conclusions of law were filed by the trial court. This appeal timely followed.

## II. APPELLANTS' ISSUES

### A. *Lack of Findings of Fact and Conclusions of Law*

In their first issue, the Santiagos contend the trial court erred by "failing to file findings of fact and conclusions of law, despite two timely successive requests to do so." Therefore, the Santiagos argue, "this case should be reversed and remanded" or, "[i]n the alternative, this Court

---

**IT IS ORDERED, ADJUDGED AND DECREED** that:
    1. This Final Judgment serves as an Order of Foreclosure of a Home Equity Loan in accordance with TEX. CONST. art. XVI § 50(a)(6).
. . . .
    5. One of the effects of the non-judicial foreclosure shall be that Plaintiffs are divested and the purchaser of the Property at the non-judicial foreclosure sale is vested with all right, title and interest to the Property.
. . . .
    7. After the non-judicial foreclosure is held, if the property remains occupied after this judgment becomes final and the Defendant is the purchaser of the Property at the non-judicial foreclosure sale, a writ of possession shall issue against any occupant of the Property in accordance with TEX. R. CIV. P. 310.

(emphasis original).

[6] The Santiagos state in their brief on appeal, and Central does not dispute, that an initial request for findings of fact and conclusions of law was filed by them on February 24, 2014, "but for reasons unknown to counsel the image of the initial request does not appear in the District Clerk's Official Record."

could abate this proceeding and require the trial court judge to file such complete findings of fact and conclusions by a reasonable date certain."

Central responds in part that findings of fact and conclusions of law "are not required in this case because there was no conflicting evidence presented to the trial court." Specifically, according to Central, "the only factual issue presented at trial was the misguided theory that there were two different copies of the note" and "[c]ounsel for [the Santiagos] recognized, at trial, that the notes are identical." Alternatively, Central argues, "assuming findings of fact and conclusions of law were required, any purported error would be harmless because [the Santiagos] were not prevented from properly presenting their case on appeal."

When properly requested, the trial court has a mandatory duty to file findings of fact and conclusions of law. *Byboth v. Wood Ltd. P'ship*, No. 05-08-00915-CV, 2009 WL 1416768, at *1 (Tex. App.—Dallas May 21, 2009, pet. denied) (mem. op.) (citing TEX. R. CIV. P. 296, 297; *Landerman v. State Bar of Tex.*, 247 S.W.3d 426, 430 (Tex. App.—Dallas 2008, pet. denied)). If the trial court fails to file findings of fact and conclusions of law after a proper request, the failure is presumed harmful unless the record affirmatively shows the complaining party suffered no injury. *Id.* (citing *Landerman*, 247 S.W.3d at 430); *see also Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (failure to file findings of fact and conclusions of law is harmful if it prevents appellant from properly presenting case to appellate court). "Fact findings are not necessary, however, when the matters in question are not disputed." *Byboth*, 2009 WL 1416768, at *1. "Accordingly, where the facts are undisputed and the only matters presented on appeal are legal issues to be reviewed de novo, the failure to file findings of fact and conclusions of law is harmless error." *Id.*; *accord In re Fortenberry*, 261 S.W.3d 904, 910 (Tex. App.—Dallas 2008, no pet.).

In the case before us, the Santiagos do not describe, and the record does not show, any facts that were disputed at trial. Further, the Santiagos do not explain, and the record does not show, how they were prevented from properly presenting their case to this Court or have otherwise suffered injury from the alleged error. On this record, we conclude findings of fact were not necessary and any error by the trial court in failing to file findings of fact and conclusions of law was harmless. *See Byboth*, 2009 WL 1416768, at *1.

We decide the Santiagos's first issue against them.

### B. Challenge as to "Capacity"

In their second issue, the Santiagos contend the trial court erred by rendering a take-nothing judgment against them because "the parties had proven to the trial court that one or more instruments in the chain of ownership of the note and lien on which Central relies was executed by a person acting without proper capacity."[7] According to the Santiagos's brief on appeal,

> The Assignment of Mortgage should be disregarded because it was executed by a person plainly employed by Central, though claiming to act as an officer of MERS to transfer the note and lien from MERS as nominee for Carnation & Company, Inc. to Central, while there was an indorsement of the note from Carnation & Company, Inc. to Flagstar Bank. Thus, MERS could not have been an effectual nominee for Carnation, which had long since transferred the note and lien to Flagstar, and there is no showing of there ever being a transfer back from Flagstar to MERS in the interim.

The Santiagos do not explain, and the record does not show, how their argument described above is consistent with (1) their counsel's assertion at trial that the Note bears a "typed endorsement in blank to Flagstar" that "appears to be unsigned" and (2) their argument in their motion to vacate judgment that the Note "did not appear to be indorsed from Carnation & Company, Inc., the original payee of the Note, to anyone (other than a blank indorsement block that named Flagstar Bank)" and "[t]here was no completed indorsement to Flagstar."

---

[7] Additionally, the Santiagos assert in their second issue that the trial court erred by "dismissing all . . . claims against Central with prejudice." The record does not show the final judgment specifically dismissed the Santiagos's claims against Central with prejudice.

Moreover, Texas Rule of Civil Procedure 93 requires that a pleading "setting up" certain matters "shall be verified by affidavit" unless "the truth of such matters appear of record." TEX. R. CIV. P. 93. Those matters include, in part, (1) "[t]hat the plaintiff is not entitled to recover in the capacity in which he sues" and (2) "[t]hat there is a defect of parties, plaintiff or defendant." *Id*. "[W]hen a case falls within one of the categories defined by rule 93, a general denial is insufficient; the defendant must provide a verified denial, supported by an affidavit based on personal knowledge." *John C. Flood of DC, Inc. v. SuperMedia, L.L.C.*, 408 S.W.3d 645, 653 (Tex. App.—Dallas 2013, pet. denied) (citing TEX. R. CIV. P. 93; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991); *Bluebonnet Fin. Assets v. Miller*, 324 S.W.3d 603, 609 (Tex. App.—El Paso 2010, no pet.)); *accord Pledger v. Schoellkopf*, 762 S.W.2d 145, 146 (Tex. 1988) (party against whom cross-claim was filed was required to file a plea of verified denial under rule 93 to contest cross-claimant's capacity). Generally, a party who fails to follow this requirement waives the right to complain about the matter on appeal. *John C. Flood of DC, Inc.*, 408 S.W.3d at 653; *see Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996) ("We have not hesitated in previous cases to hold that parties who do not follow rule 93's mandate waive any right to complain about the matter on appeal."); *but cf. Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 899 (Tex. 2011) (concluding defendant who failed to file verified denial did not waive right to complain on appeal about plaintiffs' capacity to recover where issue of capacity was adjudicated in plaintiffs' favor in summary judgment proceeding prior to trial); *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009) (lack of verified denial did not preclude complaint on appeal because record showed both parties presented evidence on issue and issue was developed during trial without objection).

In the case before us, the record shows the Santiagos did not file a verified denial respecting Central's counterclaim. Further, the Santiagos do not assert, and the record does not

show, that "capacity" was adjudicated in Central's favor by summary judgment prior to trial or addressed during trial. On this record, we conclude the Santiagos's appellate complaint as to "capacity" presents nothing for this Court's review. *See Nootsie, Ltd.*, 925 S.W.2d at 662; *John C. Flood of DC, Inc.*, 408 S.W.3d at 653; TEX. R. CIV. P. 93.

We decide against the Santiagos on their second issue.

### *C. Nature of Relief Granted in Judgment*

Next, we address together the Santiagos's third and fourth issues, in which they contend the trial court's judgment is "void" because it purports to grant relief (1) "inconsistent with the exclusive means of carrying out a judicial foreclosure, for which [Central] pleaded" and (2) "not in conformity with the pleadings." Specifically, the Santiagos argue (1) in its pleadings, "Central sought judicial foreclosure and a writ of possession to be executed pursuant thereto, to the exclusion of other remedies"; (2) "Texas procedure permits only one form of judicial foreclosure," i.e., a "sheriff's sale" pursuant to Texas Rule of Civil Procedure 309, and therefore the trial court "lacked jurisdiction to enter the judgment it did" and the judgment "is void, at least insofar as such judgment attempts to authorize a trustee's sale of [the Santiagos's] property under Texas Property Code Chapter 51"; and (3) Central "was in fact entitled to neither non-judicial nor judicial foreclosure" because "there is no election of remedies or alternative relief sought, merely inconsistent relief."

Central responds in part that "[the Santiagos's] contention that [Central] failed to plead for a ***non-judicial*** foreclosure sale is simply wrong" (emphasis original) because "[t]he record shows that [Central] pled in the alternative for permission to: (1) conduct a judicial foreclosure pursuant to Rule 309; and/or (2) conduct a non-judicial foreclosure sale pursuant to [Texas Rule of Civil Procedure] 735(2) and Section 51.002 of the Texas Property Code." Further, Central argues (1) the Santiagos "cite no authority for the proposition that a trial court cannot order a

non-judicial foreclosure sale"; (2) because Central pleaded for permission to conduct a non-judicial foreclosure sale and the trial court granted that request, the judgment conforms to Central's pleadings; and (3) alternatively, "should [this Court] find that [Central] did not plead for a non-judicial foreclosure sale, the issue was tried by consent."

Under Texas Rule of Civil Procedure 48, "[a] party may set forth two or more statements of a claim or defense alternatively or hypothetically" and "may also state as many separate claims or defenses as he has regardless of consistency and whether based upon legal or equitable grounds or both." TEX. R. CIV. P. 48. The record in the case before us shows Central's counterclaim contained (1) a section titled "Judicial Foreclosure" in which Central stated "[p]ursuant to TEX. R. CIV. P. 309, [Central] seeks a judgment for foreclosure, together with an order of sale issued to the sheriff or constable of the county where the Property is located directing the sheriff or constable to seize and sell the Property in satisfaction of the judgment" and (2) a section titled "Non-Judicial Foreclosure" in which Central stated it "seeks non-judicial foreclosure pursuant to TEX. CONST. art. XVI § 50(a)(6) and TEX. R. CIV. P. 735(2) or 735(3), and TEX. PROP. CODE § 51.002 with respect to all Plaintiffs who are obligated for the Loan Agreement debt." Even assuming without deciding that the sections of Central's pleading pertaining to judicial foreclosure and non-judicial foreclosure were, as alleged by the Santiagos, "inconsistent," Central was entitled to include both sections in its pleading pursuant to rule 48. TEX. R. CIV. P. 48. Additionally, during trial, counsel for Central asserted in part that Central had "counterclaimed for non-judicial foreclosure and writ of possession." The Santiagos did not specifically address non-judicial foreclosure at trial. On this record, we cannot agree with the Santiagos's assertions that (1) Central "sought judicial foreclosure and a writ of possession to be executed pursuant thereto, to the exclusion of other remedies" and (2) the trial court's judgment is "not in conformity with the pleadings."

–11–

Further, in support of their position that a trial court lacks "jurisdiction" to order a non-judicial foreclosure sale, the Santiagos cite *Brown v. EMC Mortgage Corp.*, 326 S.W.3d 648 (Tex. App.—Dallas 2010, pet. denied). In that case, the plaintiffs ("the Browns") filed suit against EMC Mortgage Corporation ("EMC") seeking injunctive relief to prevent foreclosure on their home and alleging violations of the Texas Fair Debt Collection Practices Act. *Id.* at 649. EMC counterclaimed "for foreclosure." *Id.* at 650. The trial court granted EMC's motion for summary judgment on its counterclaim and, several months later, signed an order authorizing EMC to sell the Browns's property at public auction pursuant to section 51.002 of the Texas Property Code. *Id.* The Browns appealed, contending in part the trial court erred by ordering their property be sold by EMC at public auction because "this relief is inconsistent with the exclusive means of carrying out a judicial foreclosure of a mortgage lien" described in Texas Rule of Civil Procedure 309. *Id.* at 653. This Court stated in part that "[b]ecause nothing in chapter 51 conflicts with rule 309, we must assume that the legislature intended for judicial foreclosures to continue to be conducted by sheriffs or constables even after the enactment of chapter 51." *Id.* at 654. Therefore, this Court concluded, "the order of sale in this case is not in compliance with Texas law." *Id.*

This Court's opinion in *Brown* did not specifically describe EMC's counterclaim or indicate whether EMC requested non-judicial foreclosure. Therefore, *Brown* is distinguishable from the case before us, in which the record shows Central specifically pleaded, in part, for non-judicial foreclosure. The Santiagos cite no other authority, and we have found none, to support their position that the trial court "lacked jurisdiction" to order a non-judicial foreclosure. *Cf. Chance v. CitiMortgage, Inc.*, 395 S.W.3d 311, 313–16 (Tex. App.—Dallas 2013, pet. denied) (affirming trial court's summary judgment authorizing loan servicer to conduct non-judicial foreclosure of home equity lien); *Weeks v. Bank of Am., N.A.*, No. 02–13–00039–CV, 2014 WL

345633, at * (Tex. App.—Fort Worth Jan. 30, 2014, no pet.) (mem. op.) (affirming trial court's summary judgment authorizing appellee to enforce deed of trust by non-judicial foreclosure in case in which appellee pleaded for "non-judicial foreclosure, or in the alternative, a judicial foreclosure").

We decide against the Santiagos on their third and fourth issues.

### III. CONCLUSION

We decide the Santiagos's four issues against them. The trial court's judgment is affirmed.


140552F.P05


/ Douglas S, Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DIANE B. SANTIAGO AND P. SCOTT
SANTIAGO, Appellants

No. 05-14-00552-CV    V.

CENTRAL MORTGAGE COMPANY,
Appellee

On Appeal from the 199th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 199-04179-2011.
Opinion delivered by Justice Lang, Justices
Stoddart and Schenck participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

     It is **ORDERED** that appellee Central Mortgage Company recover its costs of this appeal
from appellants Diane B. Santiago and P. Scott Santiago and from the cash deposit in lieu of
supersedeas bond.  After all costs have been paid, the District Clerk of Collin County is directed
to release the balance, if any, of the cash deposit to appellant P. Scott Santiago.


Judgment entered this 21st day of April, 2015.