**Affirm and Opinion Filed March 22, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-01459-CV**

**GEORGE P. BANE, INC., Appellant**

**V.**

**JOE BALLARD, Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-07758**

## MEMORANDUM OPINION

Before Justices Myers, Osborne, and Carlyle
Opinion by Justice Myers

George P. Bane, Inc. appeals the trial court's judgment that it take nothing following a trial before the court on its suit against Joe Ballard for breach of a guaranty agreement. Appellant brings two issues on appeal contending it proved its cause of action for breach of a guaranty agreement and that Ballard failed to prove his defense of forgery. Ballard brings a motion to dismiss the appeal arguing appellant lacks standing. We deny the motion to dismiss, and we affirm the trial court's judgment.

# BACKGROUND

In 2010, Ballard and Ronnie Shadowen formed Affordable Sand & Materials, LLC to excavate and sell sand. Shadowen had the knowhow to run the day-to-day operations, and Ballard provided the capital and good credit to fund and obtain credit for Affordable Sand.

In 2011, Affordable Sand needed a replacement tractor, and Ballard and Shadowen decided to lease with option to purchase a tractor from Bane Machinery, Inc. On March 11, 2011, Shadowen went to Bane Machinery, Inc.'s office to discuss the transaction with George Bane, the president of Bane Machinery, Inc. Ballard was not present at the meeting, but Bane testified that Shadowen told Bane he was calling Ballard on his cell phone, and it was Bane's understanding that Shadowen was on the phone with Ballard during the meeting.

Bane required Shadowen and Ballard to complete a credit application form before extending credit to Affordable Sand to acquire the tractor. The credit application form was headed "George P. Bane, Inc." The application required Shadowen and Ballard's signatures as owners of Affordable Sand and Ballard's signature as the individual guarantor. The credit application was faxed to Ballard for his signatures. The document was faxed back to Bane's office with signatures purporting to be Ballard's as an owner of Affordable Sand and as guarantor of the credit extended to Affordable Sand.

The completed credit application included Ballard's social security number, driver's license number, and credit references including the name of the Bank Ballard used, the bank officer Ballard dealt with, and the names of other businesses with which Ballard had done business. Ballard confirmed at trial that the information on the credit application was correct.

The credit application provided a line of credit to Affordable Sand for the tractor as well as for future purchases. The credit application set forth the terms of the line of credit: payment due on the tenth of the month following the month of purchase and past due accounts subject to a monthly finance charge of 1-1/2 percent.

For the first few years, Affordable Sand was able to pay its bills for the items leased and purchased from Bane Machinery, Inc., including that first tractor, but it later was not able to pay for its subsequent purchases and leases. By the time of trial, Affordable Sand owed $256,294.87 for unpaid rentals, goods, services, and interest.

Appellant sued Affordable Sand, Ballard, and Shadowen for breach of contract and suit on a sworn account, and appellant sued Ballard for breach of guaranty. Affordable Sand did not answer the suit, and the trial court rendered a default judgment against it. Ballard filed a verified denial of the claims, and he stated in the affidavit attached to the answer that he did not sign the credit application or authorize anyone to sign for him. Ballard alleged in a supplemental answer that the signatures of his name on the credit application were forgeries.

The case was tried before the court. Ballard testified that he did not sign the credit application and he did not authorize anyone to sign it on his behalf. Bane testified that Ballard was not present in his office on March 11, 2011, and that he did not see Ballard sign the credit application. Bane testified that he thought Shadowen was on his cell phone with Ballard during the March 11 meeting.

Ballard testified that for the first two or three years of the business, he had access to Affordable Sand's bank statements, which he reviewed. He observed that Affordable Sand made payments to Bane Machinery. After that first two or three years, Affordable Sand changed banks or changed the password to its online account, and Ballard was no longer able to access the company's bank statements.

Shadowen testified that Ballard was on the phone with him during the meeting with Bane and that he did not sign Ballard's name. He also testified he did not know or have access to Ballard's social security number, driver's license number, or credit references. According to Shadowen, Ballard was "specifically aware of the line of credit that the company opened up at Bane Machinery." He also testified that Affordable Sand paid off the debt for the tractor acquired in that first transaction.

The trial court found for Ballard and rendered judgment that appellant take nothing on its claims against him. Appellant nonsuited its claims against Shadowen. Appellant now appeals the judgment on its claims against Ballard.

## MOTION TO DISMISS

Ballard moves to dismiss this appeal on the ground that appellant lacks standing. Standing is a constitutional prerequisite to suit, and it is a component of subject-matter jurisdiction. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018). Standing cannot be waived, and it may be raised for the first time on appeal. *Id.*

"In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Id.* (quoting *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012)). There are three elements to standing. First, the plaintiff must plead facts demonstrating that the plaintiff has suffered the injury. *Id.* at 485. Second, the plaintiff's alleged injury must be "fairly traceable" to the defendant's conduct. *Id.* Third, the plaintiff must show a substantial likelihood that the requested relief will remedy the alleged injury. *Id.* In this case, Ballard argues appellant failed to meet the first requirement, pleading facts demonstrating the plaintiff suffered the alleged injury.

When standing is raised for the first time on appeal, the appellate court construes the petition in favor of the plaintiff, and, if necessary, may review the entire record to determine if any evidence supports standing. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Appellant alleged the following:

Bane Machinery, Inc. is in the business of selling, renting and maintaining heavy construction equipment. Those goods and services

–5–

may be paid for up front, or they may be purchased on credit through Bane Machinery, Inc.'s affiliated entity, George P. Bane, Inc. (both Bane entities referred to jointly herein as "Bane" or "Bane Machinery"). On March 11, 2011, Joe Ballard, on behalf of Affordable Sand and Material LLC, signed a Credit Application in which Bane Machinery agreed to extend an account of credit to Affordable Sand for the purchase of goods and services from Bane Machinery.

. . . .

Affordable Sand has breached the terms and conditions of its agreement with Bane. Between July 17, 2015 and the Present, Bane provided rentals, product sales and other professional services to Affordable Sand as noted in Exhibit B, incorporated herein by reference, which remain unpaid.

. . . .

On March 11, 2011, Defendant Joe Ballard executed and delivered to Bane a written guaranty by which he personally guaranteed Affordable Sand's account with Bane, including all amounts due and payable under rental, purchase and service transactions between Affordable Sand and Bane. . . .

As a result of the breach of the agreement by Defendant Affordable Sand and as a result of the written guaranty executed and delivered to Bane by Defendant Ballard, Ballard owes Bane, jointly and severally with Affordable Sand, the sum of $176,639.92, as of May 10, 2017, for unpaid amounts due . . . .

These pleadings allege that appellant extended credit to Affordable Sand for purchases from Bane Machinery, Inc. Ballard guaranteed Affordable Sand's obligation on the extension of credit by appellant. Affordable Sand failed to pay the amounts appellant loaned under the extension of credit. And Affordable Sand and Ballard now owe appellant the unpaid amount of at least $176,639.92. These pleadings allege an injury suffered by appellant.

–6–

Ballard points out that all the invoices were from Bane Machinery, Inc., not appellant. Regardless of the origin of the invoices, appellant alleged it extended credit to Affordable Sand that Ballard guaranteed, that Affordable Sand drew on the credit extended, and neither Affordable Sand, Shadowen, nor Ballard paid back the money.

We conclude appellant's pleadings demonstrate appellant's standing to sue Ballard, and we deny Ballard's motion to dismiss the appeal.

## STANDARD OF REVIEW

In its two issues, appellant contends the evidence is not legally and factually sufficient to support the trial court's findings.

A trial court's findings of fact in a nonjury trial carry the same force and dignity as a jury's verdict on jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 436–37 (Tex. App.—Dallas 2010, no pet.). When we review a trial court's findings of fact for legal and factual sufficiency, we use the same standards of review we use when determining if sufficient evidence exists to support a jury's answers. *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex. 1994); *Thornton v. Dobbs*, 355 S.W.3d 312, 315 (Tex. App.—Dallas 2011, no pet.). When a trial court enters findings of fact and conclusions of law, we "indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment." *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d

–7–

241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). In a bench trial, the trial court judges the credibility of the witnesses, determines the weight of testimony, and resolves conflicts and inconsistencies in the testimony. *See Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App.—Houston [1st Dist.] 1992, writ denied). As long as the evidence falls "within the zone of reasonable disagreement," we will not substitute our judgment for that of the fact-finder. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

In a legal sufficiency review, we view the evidence in the light most favorable to the fact-finding, credit favorable evidence if a reasonable fact-finder could do so, and disregard contrary evidence unless a reasonable fact-finder could not. *See id.* at 827. "[F]indings of fact bind an appellate court only if the findings are supported by evidence of probative force." *Thomas v. Casale*, 924 S.W.2d 433, 437 (Tex. App.—Fort Worth 1996, writ denied). Unchallenged findings of fact are binding on the appellate court "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *Id.* (quoting *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). When the appellant attacks a finding on which the appellant had the burden of proof in the trial court, the appellant must demonstrate on appeal that the evidence establishes, as a matter of law, all vital

facts in support of the issue.  *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

In a factual sufficiency review, we view all the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust.  *Dow Chem. Co.*, 46 S.W.3d at 242; *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Morris v. Wells Fargo Bank, N.A.,* 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.).

We review de novo a trial court's conclusions of law.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  A conclusion of law is erroneous as a matter of law if the factual findings supporting the conclusion are not supported by any evidence.  *Wright Group Architects–Planners, P.L.L.C. v. Pierce*, 343 S.W.3d 196, 205 (Tex. App.—Dallas 2011, no pet.).  If we determine that the trial court made an erroneous conclusion of law, we will not reverse if the trial court rendered the proper judgment.  *See BMC Software*, 83 S.W.3d at 794.  We uphold conclusions of law if the judgment can be sustained on any legal theory supported by the evidence.  *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 769 (Tex. App.—Corpus Christi–Edinburgh 2001, no pet.).

## BREACH OF GUARANTY

In its first issue, appellant contends, "There was more than a preponderance of the evidence to prove [Ballard's] breach . . . ."[1] However, the question on appeal is not whether a preponderance of the evidence supported appellant's claim; the question is whether appellant proved its claim as a matter of law or whether the trial court's findings that appellant did not prove its claim are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.

The elements of a breach of contract cause of action are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied). When the defendant does not file a verified denial of a written instrument, he waives any challenge to the genuineness of the execution of the instrument, and the document is received into evidence as fully proved. *See* TEX. R. CIV. P. 93(7); *Lissiak v. SW Loan OO, L.P.*, 499 S.W.3d 481, 494 (Tex. App.—Tyler 2016, no pet.); *FFP Mkg. Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 410 (Tex. App.—Fort Worth 2005, no pet.). When the defendant files a verified denial, the burden is on the plaintiff to prove the defendant's execution of the document. *See Decor Dimensionals, Inc. v. Smith*, 494

---

[1] This is the wording set forth in the "Argument" section of appellant's brief. Appellant worded the issue slightly differently but with the same meaning in the "Issues Presented" section of the brief: "Whether Appellant met its burden of proof in establishing a breach of personal guarantee . . . ."

S.W.2d 266, 268 (Tex. App.—Dallas 1973, no writ) ("[T]he presence of such a sworn plea reinstates the burden of the party relying on the instrument to prove its execution. Therefore, it was necessary for appellee to offer summary judgment proof that the note had been executed by appellant or by its authority.").

In this case, Ballard filed an answer with a verified denial and stated in the affidavit attached to the answer that he did not sign the credit application, he did not authorize anyone "to list my name on it," and he had never seen it before being served with appellant's petition. Appellant did not assert any defect in the verified denial. Therefore, appellant had the burden of proving Ballard executed the credit application.

The only witnesses who testified at the trial were Bane, Ballard, and Shadowen.[2] Shadowen and Bane both testified they did not see Ballard sign the document. Ballard testified he did not sign it, and he testified that the signatures on the credit application were not his. The court found that Bane "did not see Ballard sign or write on the Credit Application, and has no knowledge that Ballard either signed or wrote on the Credit Application, or authorized anyone to sign or write information for him." The court also found that Ballard provided less than a scintilla of evidence to explain how his personal information made its way onto the credit application. These findings are supported by the evidence admitted at the trial.

---

[2] Shadowen did not personally appear at the trial, but the parties presented excerpts from his deposition.

–11–

The court concluded that because Ballard filed a verified denial of the signature on the credit application,

> Bane carries the burden of proving that the Credit Application was in fact signed, authorized, or agreed to by Ballard. Bane cannot meet this burden because Ballard testified unequivocally denied [sic] at trial that the signature on the Credit Application is a forgery. Further, Bane's two witnesses testified neither has personal knowledge that Ballard did in fact sign the document or agree to have anyone sign his name to the Credit Application.

In the conclusions of law concerning appellant's claims for breach of contract and breach of guaranty, the court stated,

> Bane has the burden of providing substantial facts and evidence that show that Ballard did in fact sign the agreement and intended to be bound to its terms and conditions. As stated above, Bane failed to carry its burden to prove that Ballard signed or agreed to any aspect of the Credit Application.

The court also found that several sample signatures of Ballard were admitted into evidence, "and all of them appear different from Ballard's purported signature to the Credit Application."

Appellant complains of this "Conclusion of Law" by the trial court: "Bane *cannot* meet this burden [proving Ballard signed the guaranty on the credit application] because Ballard testified unequivocally denied [sic] at trial that the signature on the Credit Application is a forgery." (emphasis added) Appellant appears to argue the trial court ruled that a verified denial combined with the defendant's testimony denying execution of a contract, as a matter of law, bars the plaintiff from recovering for breach of contract. We do not think that was the trial

–12–

court's meaning in this case. Instead, it appears the trial court's conclusion was that appellant had the burden of proving Ballard executed the guaranty on the credit application, but the court concluded appellant failed to meet that burden because Ballard testified he did not execute the application and the other witnesses testified they had no personal knowledge of Ballard executing the application. Implicit in that conclusion is the trial court's determination to give greater weight to Ballard's testimony that he did not execute the credit application than to the inadequately explained presence of Ballard's personal information on the credit application.

Appellant appears to argue the great weight of the evidence supports its position that Ballard signed the guaranty on the credit application and that the trial court's finding to the contrary was clearly wrong and unjust. Appellant points out that Ballard's role in Affordable Sand was to be the person on whose credit the company would rely for large purchases. Ballard was also involved in the selection of Bane Machinery, Inc. to supply the tractor. Shadowen testified he and Ballard liked the tractor at Bane Machinery, Inc. because of its age, amount of use, and price. Shadowen also testified he discussed the terms of the credit application with Ballard and that Ballard agreed to those terms. However, Shadowen's testimony is, at most, that Ballard agreed to Affordable Sand obtaining a tractor in a lease/purchase arrangement with Bane's companies. Shadowen did not testify that they discussed Ballard being the guarantor of Affordable Sand's future purchases from Bane

Machinery. It is also no evidence that Ballard signed the guaranty agreement on the credit application.

Appellant also asserts that Bane and Shadowen testified "that someone purporting to be the Appellee, who was called by the Appellee's business partner at the number he knows to be the Appellee's cell phone, was on the telephone during this transaction. This caller, who purported to be the Appellee, Joe Ballard, provided his fax number and a litany of personal and financial information known only to the Appellee, which the Appellee admits at trial to be entirely accurate information!" (citations omitted) Bane testified that Shadowen made a phone call, which Shadowen said was "to his money man," and that he heard only one side of the conversation. Shadowen testified he "was on the phone with him [Ballard] throughout the whole process on the very first deal." No one asked Ballard if he was on the phone with Shadowen during the meeting. However, Ballard testified that Shadowen never told him that Affordable Sand was applying for a line of credit. It was up to the trial court to determine the weight to give to the testimony. The trial court could determine that, even if Ballard was on the phone with Shadowen during the meeting, it was not evidence that Ballard signed the guaranty on the credit application, particularly in light of Ballard's testimony that he did not know Shadowen had applied for a line of credit for Affordable Sand.

The evidence also does not support appellant's statement that Ballard "provided his fax number"; the testimony showed that the fax containing the signed

–14–

credit application and guaranty was sent to appellant's office from Affordable Sand's office in Quinlan, Texas. Ballard denied that he was at Affordable Sand's office at the time and date of the meeting but stated he was at his lake house for his granddaughter's birthday; and Shadowen testified that Ballard was in Houston at the time of the meeting. Thus, although the record shows the fax number for Affordable Sand may have been provided, the record does not show that was Ballard's fax number or that Ballard had access to Affordable Sand's fax machine on that date.

Appellant also points out that the credit application contained Ballard's social security number, driver's license number, and credit references. Ballard testified that Shadowen could have obtained his social security number from their application to Chase Bank to open a bank account for Affordable Sand. He testified that Shadowen would have known where he banked because he had given Shadowen checks in the past. He said Shadowen might have been able to deduce Ballard's credit references from conversations with him. But Ballard had no explanation for how Shadowen would have known his driver's license number. The trial court found Ballard provided "less than a scintilla of evidence offered of how, other than the social security number, the information may have been obtained." Ballard's failure to provide a non-speculative explanation for the presence of his personal information on the credit application might be circumstantial evidence that would support a trial court's finding Ballard's testimony not credible, but it is not conclusive evidence that he signed the guaranty agreement. Nor does that evidence, standing alone or

considered with Shadowen and Bane's testimony, constitute such a great weight and preponderance of the evidence as to make the court's determination that appellant failed to prove Ballard executed the credit application clearly wrong and unjust.

Appellant also points to Ballard's testimony that he monitored Affordable Sand's bank statements and saw payments to Bane Machinery during the two or three years he had access to the bank statements. However, this testimony is only evidence that Ballard knew of the payments to Bane Machinery. It is not evidence that he provided a personal guaranty of the credit extended to Affordable Sand for all products and services it leased or purchased from Bane Machinery. When asked if he understood that the payments shown on the bank statements related to the credit account, Ballard testified, "I knew that they were payments for a tractor. I didn't know anything about a line of credit. . . . I realize that they were to Bane Machinery. I don't know anything about any credit account."

Appellant argues that Ballard's testimony that it was not his signature on the credit application

> amounts to nothing more than a declaration that he has no recollection of the agreement. He doesn't testify that his fingers were all broken so he couldn't lift a pen, or that his fax machine was down, or that he discussed the agreement and declined to sign it, or any other basis for an affirmative recollection that he did not sign. He merely has no memory of it.

In support of this assertion, appellant cites the following exchange between appellant's attorney and Ballard:

Q. That's because you have no recollection of ever signing that credit agreement. Right?

A. I never signed that credit agreement. That's not my signature.

Appellant's question asked Ballard if he merely had no memory of signing the agreement. Ballard's answer was not responsive to the question and made clear his position was not merely a failure to recall having signed the document eight years earlier. He denied having signed it and affirmatively asserted that the signature on the guaranty of the credit application was not his.

Appellant also points to Ballard's testimony that his signature varies from signing to signing. Ballard confirmed that his two signatures on an invoice from TNT Equipment were genuine. The signatures on the TNT invoice appear to vary slightly from each other, but they also appear markedly different from the signatures on the credit application. The trial court found, "A number of sample signatures from before and after the 2011 credit application were admitted into evidence . . . , and all of them appear different from Ballard's purported signature to the Credit Application."

Appellant argues that the trial court erred by comparing the signatures on the credit application to signatures Ballard testified were genuine and that the court erred by comparing those signatures to Shadowen's signature. Ballard's attorney offered into evidence a page containing several signatures of Ballard's that he stated were genuine. Appellant did not object to the exhibit, and the trial court admitted it into evidence. Both appellant's attorney and Ballard's attorney questioned Ballard about

–17–

his signature and how it varied from signing to signing and whether those differed significantly from the signatures on the credit application. The trial court found the sample signatures appeared different from the purported signatures on the credit application. On appeal, appellant states, "it is long established in Texas that lay testimony comparing signature samples has no probative value at all where the witness is not shown to have unique knowledge of both signatories' signatures," citing *Hanley v. Gandy*, 28 Tex. 211 (1866), in support of this statement. *See also Abeel v. Weil*, 283 S.W. 769, 771 (Tex. 1926) ("Before a witness is qualified, or, in other words, competent, to testify to his opinion or belief that a particular signature presented to him is the genuine signature of another, such witness must be acquainted with the signature or handwriting of such other person. Such acquaintance is not presumed, but must be shown by evidence.").

Because appellant did not object to the evidence comparing Ballard's signatures, appellant has not preserved for appellate review any error from the admission of this evidence. TEX. R. APP. P. 33.1. But even if the trial court erred by comparing the signatures, the error is not reversible unless it probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a). The trial court concluded appellant failed to meet its burden that the credit application was signed by Ballard because no witness testified to having personal knowledge that Ballard signed it and Ballard denied signing it. The trial court did not need to examine the signatures to reach this conclusion. Accordingly, any error by the trial court in

–18–

comparing Ballard's admitted signatures to those on the credit application was not reversible error.

The trial court also concluded, "Further, there was no evidence that [appellant, George P. Bane, Inc.]—as opposed to Bane Machinery, Inc.—provided anything of value to, or transacted any business with, Ballard." Appellant asserts this conclusion is "demonstrably false" because appellant was "the entity which provided a line of credit to [Ballard] for purchases at any of the Bane entities." The evidence shows all the Bane entities' transactions were with Affordable Sand, not Ballard. Thus, as the trial court found, there is no evidence that any of the transactions were with Ballard or that they provided anything of value to Ballard.

We conclude appellant has not shown it conclusively proved Ballard executed the guaranty on the credit application, nor has appellant shown the trial court's findings and conclusions that appellant failed to meet its burden to prove Ballard executed the guaranty were so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Therefore, the evidence is legally and factually sufficient. We overrule appellant's first issue.

**FORGERY**

In its second issue, appellant contends Ballard failed to prove his forgery defense. We need not reach this issue because we have already determined the trial court did not err by determining appellant failed to meet its burden of proving Ballard executed the guaranty on the credit application. Because appellant failed to

–19–

meet its burden of proof on its claim, we need not consider whether Ballard met his burden of proof on a defense to that claim. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.


/Lana Myers/
LANA MYERS
JUSTICE

191459F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GEORGE P. BANE, INC., Appellant

No. 05-19-01459-CV    V.

JOE BALLARD, Appellee

On Appeal from the 44th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-17-07758. Opinion delivered by Justice Myers. Justices Osborne and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JOE BALLARD recover his costs of this appeal from appellant GEORGE P. BANE, INC.

Judgment entered this 22nd day of March, 2021.